## HARMON v. WAGENER.

1. Under an action by an executor for sale of land, and to marshal assets and enjoin creditors from suing at law, defendant creditors may have a receiver appointed to administer testatrix's estate without having first sued their claims to judgment and obtained a return of *nulla bona* thereon.

2. It having been shown in such action that the executor was guilty of misconduct in his administration and was not a safe custodian of the estate, and was insolvent and that the estate was insolvent, the assets were properly taken out of the hands of the executor and turned over to a receiver appointed by the court on motion of creditors for that purpose.

3. As a receiver may be appointed at chambers, so, too, an order may be passed at chambers attaching for contempt an executor who has failed to obey a previous order of the court directing him to turn over the assets of the estate to a receiver appointed in the cause.

4. An order directing an executor to turn over assets to a receiver, is not·

stayed by an appeal to the Supreme Court unless a supersedeas bond be given; and the order of the Chief Justice staying proceedings pending appeal on condition that the appellant give bond within ten days, became inoperative after the expiration of ten days, no bond having been given.

5. An executor cannot interpose his right to a chattel exemption under the homestead laws as an excuse for his failure to obey a former order of court directing him to turn over this property to a receiver. Has a husband a right to an exemption of personalty out of the estate of his wife, who died childless, as against her creditors?

Before WALLACE and FRASER, JJ., Newberry, May and July, 1889.

This was an action by Thomas F. Harmon, as executor of Mary E. Harmon, and in his own right, against F. W. Wagener & Co. and others, creditors of said Mary E. Harmon. The order of Judge Wallace in this case was as follows:

On hearing the pleadings and orders in the above stated action, the affidavits in behalf of unsecured creditors of the above named Mary E. Harmon, deceased, the order to show cause why a receiver of the real and personal estate of said deceased should not be appointed, and the return of the said Thomas F. Harmon thereto, and affidavits submitted in his behalf, and after hearing argument of counsel, on motion of O. L. Schumpert, Esq., attorney for such unsecured creditors,

It is adjudged, that the said Thomas F. Harmon has failed to administer the estate of his said testatrix, as required by law and the will of his said testatrix, and demanded by the interests of creditors. It is also adjudged, that the said Thomas F. Harmon has become insolvent, if not so at the death of the said testatrix, and is therefore not a safe custodian of the estate committed to his care under the said will. It is also adjudged, that the estate of the said testatrix now visible is probably insufficient to extinguish the demands acknowledged and established against it. It is therefore ordered, that the injunction heretofore made by me against the further sale of property of the said estate by the said Thomas F. Harmon, and against the collection by him of notes, bonds, accounts, or other claims or demands belonging to

the said estate, and also of all moneys belonging to the same, be continued and made perpetual.

It is further ordered, that D. B. Wheeler be, and he is hereby, appointed receiver of all the tangible personal property, notes, bonds, stocks, accounts, and other choses in action belonging to the said estate, and also of all moneys belonging to the same, and that the said Thomas F. Harmon, immediately upon the execution by the said receiver of a bond in the penalty of two thousand dollars, with two such sureties as shall be approved by the clerk of the Court of Common Pleas for Newberry County, do deliver to the said receiver all the moneys, tangible property, notes, bonds, stocks, mortgages, accounts, and other choses belonging to said estate, including not only all the property which came into his hands in its present form at the death of his said testatrix, but also all notes or other evidences of indebtedness which have been made or executed in payment of previous indebtedness to her, and also notes or other obligations based upon collections of her estate and lent out by him, or based upon sales of property of the estate made by the said executor, and also all tangible property and choses in action purchased by the said Thomas F. Harmon, with moneys or property belonging to the said estate. And it is further ordered, that the said receiver be, and he is hereby, authorized to demand, sue for, and collect all sums of money owing to the said estate. Motion refused as to real estate.

Other matters are sufficiently stated in the opinion of the court.

*Mr. Geo. S. Mower*, for appellant.

October 24, 1890. The opinion of the court was delivered by Mr. Justice McGowan. Mary E. Harmon, late of the County of Newberry, died March 6, 1886, leaving of force her last will and testament, by which, after the payment of her debts, she devised and bequeathed her whole estate to her husband, Thomas F. Harmon, the plaintiff. The testatrix also appointed her said husband executor of her will, with "full power to sell and dispose of the estate as to him should seem best." He qualified and

took upon himself the administration, but finding that the debts were numerous and aggregating more than the personal property was sufficient to pay, in July, 1887, he instituted this proceeding, in the nature of a creditors' bill, for a settlement of the estate of his testatrix, praying that the creditors of the estate should be called in, and enjoined from proceeding at law against him as executor, for the sale of the lands in aid of the assets in paying debts, that the assets should be marshalled, and that he should be allowed to retain in his own right whatever might remain after the payment of the debts, &c.

On July 14, 1887, Judge Pressley made an order referring the case to the master, Silas Johnstone, Esq., calling in the creditors to establish their demands and *enjoining* them from suing at law, &c., the report of "the master to be filed ten days before the next term of the court," &c. It seems that the report was not filed until July 12, 1889, and that it embraced only an account of the "unsecured claims" against the estate; for the reason that there was an agreement among the parties as follows, viz.: (1) "That said executor shall acknowledge and agree that said unsecured claims are interest-bearing from November 1st, 1887. (2) That said executor shall pay 10 per cent. on said unsecured claims within 60 days from this date, and the costs of court *instanter*. (3) That the substance of the above shall be reported by the master and said report confirmed," &c. Accordingly the master made his report only on "the unsecured claims." In consideration of the above, the attorneys "agree to stay all further proceedings until November 1st, 1889."

On April 19, 1889, O. L. Schumpert, Esq., one of the attorneys for the "unsecured creditors," filed an affidavit, which charged that the executor had failed to comply with his agreement, and, among other things, stated as follows: "Deponent further says, that he is informed and believes that the said executor is utterly insolvent, and, indeed, owns no property in his own name and right; that said executor has never made any return to the Probate Court of said county of his sales or collections in connection with the said estate or of his disbursements, nor has he exhibited his account with the said estate to the master or officer of the court, but that he has collected moneys, in-

curred debts, assigned securities, and finally sold out to his own brother-in-law the whole stock of goods and merchandise in the store of his testatrix (which was appraised at $6,900 in value soon after her death), without authority from this or any other court, without the consent of creditors, and without any object, so far as the deponent perceives or is informed, except that of possessing himself of as much money as possible and suiting his own interests and conveniences, rather than furthering the rights and interests of creditors. The deponent does not know for what price the said stock of goods was sold, but he has been informed and believes that it was sold for less than $1,500, one-third of which was cash, and the remainder unsecured.

"And the deponent further says that the said executor has had the exclusive possession and enjoyment of all the real estate of his said testatrix ever since her death ; that he has continued the mercantile business in which she was engaged during her life, until within the last four or five weeks, and has managed it according to his own pleasure, without authority from any court, without the consent or supervision of creditors, and without rendering any account of his management. And the deponent further says, that the unsecured claims outstanding against the estate amount, according to the master's report, on February 14, 1889, which was confirmed by this court on February 16th, 1889, on motion of the said executor's attorney, to upwards of $6,500; that the liens of mortgages on the real estate amount, as deponent is informed and believes, to upwards of $3,500, and that the said real estate is not worth, in the deponent's opinion, more that $7,000. And the deponent further says, that the course of the said executor convinces him that the said estate has been grossly mismanaged, and that he, the said executor, is either incompetent or unwilling to conduct the same as the interest of creditors demand, and that said executor is unfit to be longer trusted with the control of said estate. And in further support of this opinion, the deponent says that although in the prime of life, and without business, the executor has turned over the real estate to the management of his wife," &c.

On April 20, 1889, Judge Wallace issued a rule, requiring Harmon, the executor, to show cause why a receiver of the pro-

perty of the testatrix should not be appointed, to take possession and administer the same under the orders of the court. The rule was made returnable by Judge Wallace before himself, first at Union, but afterwards, on motion of plaintiff's attorney, at Georgetown, where the application was heard on May 7, 1889, and upon the return of the executor and affidavits *pro* and *con*, granted, so far as the personal estate of the testatrix was concerned. D. B. Wheeler was appointed receiver, and upon his entering into bond as was required, he "was authorized to demand, sue for, and collect all sums of money owing to the estate," &c. From this order the plaintiff gave notice of appeal, upon the following grounds, viz. :

"I. Because his honor erred in deciding 'that Thomas F. Harmon has failed to administer the estate of his said testatrix as required by law and the will of his said testatrix, and demanded by the interests of the creditors.'

"II. Because he erred in deciding that the said Thomas F. Harmon has become insolvent, if not so at the death of the said testatrix, and is therefore not a safe custodian of the estate committed to his care under the said will.

"III. Because his honor erred in deciding 'that the estate of said testatrix, now visible, is probably insufficient to extinguish the demands acknowledged and established against it.'

"IV. Because his honor erred in continuing the injunction made in the order to show cause, and in making the same perpetual.

"V. Because his honor erred in appointing a receiver of the personal estate of his said testatrix mentioned in the order of May 7, 1889.

"VI. Because his honor erred in not deciding that this plaintiff had shown good and sufficient cause why a receiver should not be appointed, as well of the personal estate of his testatrix as of the real estate," &c.

On July 9, 1889, Daniel B. Wheeler, who had been appointed receiver on May 7, 1889, filed an affidavit that he had given bond as required, and had demanded in writing that the executor Harmon should turn over to him all the property of the testatrix referred to in the order appointing him receiver; but that the

said Harmon positively refused to deliver the property as ordered. Whereupon Judge Fraser directed a rule against the said Harmon, requiring him to show cause before the said Judge (Fraser) "in open court at Newberry C. H., on Friday, July 12, 1889, why he should not be attached for contempt of court in failing to turn over to the said receiver the personal property of the testatrix, Mary E. Harmon, as directed." Harmon, the executor, made return, submitting, among other things, that at the time Wheeler attempted to qualify as receiver, he (Harmon) had perfected an appeal to the Supreme Court from Judge Wallace's order appointing a receiver; that on the same day he gave notice of a motion before Chief Justice Simpson for an order staying all proceedings under the order appealed from, until the appeal should be decided; that the Chief Justice had granted the order, on condition, however, that the appellant should enter into bond in the sum of $2,000, "to obey the decision of the Supreme Court on the appeal," which condition he proposed to perform.

At the hearing as noticed, at Newberry, it appeared that the appellant had not given the bond required by the order of the Chief Justice, but as the time within which he might do so had not expired, Judge Fraser ordered "that the further hearing of the rule be continued until Tuesday, July 23, 1889, at Spartanburg at chambers." From this order the appellant again gave notice of appeal upon the grounds: "1. Because the matter then before the court was not such as under the law could be heard and decided at chambers without consent. 2. Because his honor, the Circuit Judge, had no power or jurisdiction to order a hearing of the matter then before the court, to be heard by him in another county at chambers without consent. 3. Because the Circuit Judge had no power or jurisdiction to order a hearing of the matter then before the court, to be heard at chambers, in another county, without consent," &c.

On July 22, the day before that appointed for the hearing of the rule, the appellant made a supplemental return, in which he stated that he had abandoned his intention of giving the bond required by the order of the Chief Justice "to stay the proceedings, and that he had turned over the property required to be delivered to the receiver, with certain reservations as to the books of

account, and especially the following, signed by him : 'I acknowledge that I hold the property below described, subject to the determination of the court, upon the question whether I am entitled to the same under the homestead exemption laws of this State. In case it is decided I am not entitled thereto, I am to turn the same over to David B. Wheeler, as receiver of the estate of Mary E. Harmon, deceased, under the order of Judge Wallace (May 7, 1889).' Declining, for the reason stated, to turn the same over to him at this time." Then follows list of the property retained. Judge Fraser held that the return as amended was "insufficient; that the question as to any homestead rights which Harmon may have in the estate of his deceased wife cannot now be properly made. If there are any such rights, they must be set up in some other proceeding," &c. He ordered that the rule be made absolute, and that the said Thomas F. Harmon do turn over to the said D. B. Wheeler, receiver, the said books of account, and all the property mentioned in the return as claimed as homestead within ten days, &c. ; and that the said Thomas F. Harmon do pay ten dollars costs of this motion.

From this order also the executor, Harmon, finally appeals upon the following grounds :

"I. Because his honor was without jurisdiction to hear and determine the matters adjudged in said order at chambers without consent.

"II. Because his honor erred in adjudging the returns to the rule issued July 3, 1889, insufficient.

"III. Because his honor erred in deciding that plaintiff's appeal from the order of May 7, 1889, did not stay proceedings thereunder.

"IV. Because his honor erred in not deciding that plaintiff's appeal from the order of May 7, 1889, operated to stay further proceedings thereunder.

"V. Because he erred in deciding that the court had jurisdiction to issue the rule herein, while the motion for an order to stay proceedings was pending before the Chief Justice.

"VI. Because his honor erred in not deciding that the court was without jurisdiction to issue the rule herein, while the motion for an order to stay was pending before the Chief Justice.

"VII. Because his honor erred in overruling plaintiff's objection to the hearing of the matters embraced in said rule, and the return thereto, at chambers, without consent.

"VIII. Because his honor erred in hearing and determining the matters embraced in said rule and return thereto, notwithstanding the appeal from the order of July 13, 1889, directing the hearing to be had at chambers at Spartanburg.

"IX. Because his honor erred in ordering plaintiff to pay ten dollars costs."

The appellant also gave notice that he would move the Supreme Court "to review the order of July 13, 1889, directing the hearing on said rule to be at chambers at Spartanburg, without the consent of plaintiff, upon the grounds embraced in the notice of appeal therefrom heretofore served," &c.

As to the appeal from the order of Judge Wallace: the exceptions make substantially but one point, viz., that it was error to appoint a receiver to take the personal property of the testatrix out of the control of the executor appointed by her, and deliver it to a receiver to be administered under the supervision of the court. (1) It was urged that the judge had no jurisdiction to grant equitable relief, including the appointment of a receiver, for the reason that the creditors had not first exhausted their legal remedies, which could only be shown by proof of an execution obtained on the law side of the court, with a return upon it of *nulla bona*, which was not shown. There is such a doctrine as applicable to cases *inter vivos*, but, as we understand it, the rule of evidence has no application to a "creditors' bill" to marshal the assets of the estate of a deceased debtor. It is quite clear that a creditor may file what is known as a "creditors' bill" against the executor of his dead debtor, to make him account for the estate in his hands, without having first obtained a judgment upon the law side of the court, and procured upon it a return of *nulla bona*. The executor, Harmon, instituted this action, one of the objects of which was to enjoin the creditors from suing him at law; and if no progress can be made on the equity side of the court, until such judgment and return are shown, the executor would surely be beyond reach on either side of the court. We do not think the rule of evidence in question has any proper

application to a case like this.  See *Pelzer, Rodgers & Co.* v. *Hughes,* 27 S. C., 408, and *Austin, Nichols & Co.* v. *Morris,* 23 *Id.,* 408—both of which were cases *inter vivos.*

(2) It was further urged, that there was no jurisdiction to appoint a receiver to take the assets out of the hands of the executor, who had legal title to them, and deliver them to a receiver for the benefit of creditors who had no specific legal right to them ; that a receiver is only appointed to take and hold possession of property where the title is in controversy, which is not the case here.   This action undoubtedly was instituted by the executor, but it is as much in the nature of a creditors' bill as if the creditors had brought it against the executor.  It is true that the creditors are not entitled to the possession of the assets themselves, which are entrusted to a representative (executor) of the deceased debtor, but they have an interest in the assets for the payment of their debts, and the representative (executor) is a *quasi trustee* for them, and this gives them the right in a proper case to have a receiver appointed to take charge of the assets in order to prevent waste.   As Mr. Pomeroy puts it : "The third class [when receiver may be appointed] embraces those cases in which the person holding title to the property is in a position of trust or of *quasi trust,* and is violating his fiduciary duties by misusing, misapplying, or wasting the property, and is thereby endangering the rights of other persons beneficially interested." 3 Pom. Eq. Jur., p. 361, § 1334, and notes.   In administration suits a receiver will be appointed when the executor or administrator has been guilty of misconduct, waste, or misuse of assets, and there is real danger of loss.   Now, taking this as our guide, we must say we agree with the Circuit Judge, that a case was made for the appointment of a receiver.   We think there was no error in the order of Judge Wallace.

Then as to the orders of Judge Fraser attaching the appellant for refusing, as ordered, to turn over the personal property of the testatrix to the receiver appointed.   The exceptions may be condensed into three propositions : first, that the judge had not jurisdiction to grant the order of attachment at chambers ; second, that it was error to grant the order pending an appeal from the order appointing the receiver, which stayed all proceedings

under it until the appeal was heard; third, that it was error to require the appellant to surrender the personal property claimed by him as a homestead exemption.

(1) The attachment rule was first noticed to be heard "in open court at Newberry C. H., on July 12, 1889," but it then appeared that the time allowed by the order of the Chief Justice, for the appellant to give bond to stay the proceedings, had not expired; and Judge Fraser "continued the further hearing of the rule until Tuesday, July 23, 1889, at Spartanburg." On that day it appeared that the appellant had failed to give the bond required, and Judge Fraser, after hearing the whole case, granted the order of attachment. Was that order void for the want of jurisdiction to grant it? It does not seem so to us. A judge has the express authority to appoint a receiver at chambers (Code, section 265), and why may he not in the same way make the supplemental order to enforce obedience to the appointment? Subdivision 5 of section 265 provides that "whenever in the exercise of its authority a court shall have ordered the deposit, delivery, or conveyance of money or other property, and the order is disobeyed, the court, besides punishing the disobedience as for contempt, may make an order requiring the sheriff," &c. In the cases of *Klinck* v. *Black*, 14 S. C., 266, and *Pelzer, Rodgers & Co.* v. *Hughes*, 27 *Id.*, 408, attachments for contempt of court in refusing to obey •orders were granted by a judge at chambers. The very nature of such cases, and the danger sought to be provided against, would seem to make it necessary that the remedy for disobedience should be as prompt and summary as the appointment itself.

(2) When the order of attachment was granted at Spartanburg on July 23, 1889, was there a legal appeal pending from the order appointing the receiver, which stayed further proceedings under it until the appeal was heard? Section 350 of the Code provides "that if the judgment appealed from direct the assignment or delivery of documents or personal property, the execution of the judgment shall not be stayed by appeal, unless the things required to be assigned or delivered be brought into court, &c., or unless an undertaking be entered into on the part of the appellant by at least two sureties," &c. The order appointing a

32—33

receiver certainly directed a "delivery of documents and personal property," and as the undertaking required was not given, we think there was no legal appeal which stayed further proceedings under the order of Judge Wallace. But it is urged that after notice of appeal, the appellant made application to Chief Justice Simpson for an order staying further proceedings pending the appeal. Such an order was granted, but on condition that the appellant should, within ten days, enter into bond in the sum of $2,000, "to the effect that the appellant will obey the order of the Supreme Court upon the appeal from said order." This bond the appellant failed to give within the time indicated, and the order by its own terms, became a nullity. So that on July 23, 1887, when the attaching order was granted, there was no appeal pending which stayed the proceeding. See *Ex parte Whipper*, 32 S. C., 5.

(3) It is not stated that the testatrix, Mrs. Harmon, left any children, and we have not been referred to any law which gives to the husband a homestead exemption in the property of his deceased wife as against her creditors. If any such right exists, we agree that it could not for the first time be properly set up in the return to the rule in this case. Thomas F. Harmon, as beneficiary under his wife's will, will be entitled to whatever remains of her estate after the debts are paid; but, of course, the debts must be first paid, and as executor it is his duty to make all proper efforts to have them paid. It is not intended to decide anything as to the question of homestead; but we cannot say that the Circuit Judge committed error in requiring full performance of the order of Judge Wallace appointing the receiver.

The judgment of this court is, that the judgment of the Circuit Court be affirmed.