12937

TEMPLE *ET AL.* v. MONTGOMERY *ET AL.*

(153 S. E., 640)

*Mr. James W. Johnson,* for appellant,

*Messrs. M. C. Woods* and *H. S. McCandlish,* for respondent,

June 10, 1930.

The opinion of the Court was delivered by MR. JUSTICE BLEASE.

To avoid some repetition, the issues made by the pleadings in this cause, and the facts developed by the evidence therein, are referred to later, in our consideration of the questions raised by the appeal.

The cause was first heard by Hoyt McMillan, Esq., as special referee, who was directed to take the testimony and report his findings of fact and conclusions of law to the Court. The appellant excepted to the report of the referee, and the case was then heard by Hon. W. H. Townsend, Circuit Judge, presiding in the Court of Common Pleas for Marion County. The Circuit Judge approved, generally, the findings of fact and legal conclusions of the referee. From his decree, Miss Montgomery has appealed.

There are thirteen exceptions, and appellant's counsel state that they make nine questions. We think the questions really involved may be reduced to a smaller number; and certainly many of them, in our consideration, may be grouped.

We take up first questions relating to the law of the case. The appellant submits the question: *"Was this a creditors' bill to marshal the assets of testatrix, or an action simply to set aside a deed for fraud?"* And, in that connection, another question, *"Did not plaintiffs have an adequate remedy at law, and should they not have been required to pursue it, instead of resorting to the Court of Equity?"*

To answer the questions stated, we now refer to the pleadings. The complaint contained allegations to the following

effect: The death of Mrs. Annie S. Montgomery, testate; the devise by her of all her property to the appellant; the qualification of the appellant as executrix of the last will and testament, and her continuance in that office for about eighteen months from the time of her qualification to the commencement of this suit; the procuring of four judgments by the plaintiffs, respectively, and two judgments in favor of certain defendants against the appellant, as executrix, all of which were unpaid; an outstanding unpaid real estate mortgage executed by the deceased in her lifetime to one of the defendants, covering certain real estate then owned by her and later conveyed by her to the appellant; the holding by certain creditors of the estate of the deceased of certain securities for the payment of their respective debts, the value of which was unascertained, and a demand that they be sold by the Court and the proceeds of such sales be applied to the discharge of the debts they secured; the execution and delivery to the appellant by the deceased, only a short time prior to her death, of a deed to certain real estate (on which there was an outstanding mortgage as before mentioned), which deed was not recorded, however, until some time after the death of the grantor; that the deed mentioned "was without consideration and was made for the purpose of delaying and hindering the plaintiffs herein of their just and lawful actions, the said deed being null and void, as provided in Section 5218, Volume 3, Code of Laws of South Carolina for 1922"; that the appellant, as executrix, had in hand a small amount of money and a real estate mortgage for about $2,000; and "said amounts and all other personal property belonging to the estate are wholly insufficient to discharge the debts and obligations of the said Annie S. Montgomery, deceased."

The plaintiffs prayed: (1) The sale of the securities held by the judgment creditors, and proper credit of the amounts received therefrom on their respective judgments; (2) that the deed mentioned be declared null and void; and (3) that

the real estate described in the deed be sold in aid of assets; and for such other relief as appeared to the Court to be just.

The defendants Stackhouse and Ellen Bethea, in their answers, set up the judgments alleged to have been obtained in their favor, and joined in the prayer of the complaint. Ellen Bethea alleged that her judgment was prior to all other judgments against the appellant.

The defendant Mrs. Dargan in her answer set up the mortgage debt alleged in the complaint to be due to her. There was no question as to her right to have a foreclosure in her favor.

The appellant admitted the allegations as to formal matters; the obtaining of the judgments; the holding by some of the judgment creditors of the securities referred to in the complaint, and submitted to the Court the question as to what action should be taken in regard to them; the holding by her of a small amount of money and a real estate mortgage for $2,000, belonging to the estate of the testatrix; and the execution and delivery to her of the deed to the real estate and the recording thereof. The appellant alleged further that the assets of the estate of her testatrix were sufficient to pay all the obligations of the estate without resort to the real estate conveyed by the testatrix to her; and that the deed of the testatrix to her was made upon the request and solicitation of the president of the Farmers' & Merchants' Bank, one of the plaintiffs in the action; and that by the conduct of the president, that particular plaintiff was estopped from undertaking to set aside the deed, and if the same should be set aside, *that* plaintiff should not profit thereby. The appellant denied that the deed of the testatrix, her mother, to herself was without consideration and was made for the purposes alleged in the complaint.

There was no attack upon the complaint by way of demurrer. No challenge of its sufficiency was made by answer. If no objection to a complaint is taken in one of those ways, the defendant is deemed to have waived

any objection he may have to that pleading, excepting only the one of the jurisdiction of the Court, and the other that the complaint does not state facts sufficient to constitute a cause of action; and five days' notice of the last ground must be given. Section 405, Vol. 1, Code. No notice of any objection to the complaint was given. The jurisdiction of the Court has not been questioned in any manner. There was no motion on the part of the appellant to make the complaint more definite and certain.

In the absence of any kind of attack upon the complaint, we are to consider the instrument in a favorable light to the plaintiffs. We are to remember in that connection also two well-established rules of pleading. The first is, what is now an elementary proposition, that pleadings are to be liberally construed in favor of the pleader. The other is that in determining the issues made in a cause in equity, the presiding Judge is to consider not only the complaint but the answers of defendants—all the pleadings are examined to determine the issues. *Mortgage Loan Co. v. Townsend* (S. C.), 152 S. E., 878.

While the complaint was not as full and clear as perhaps it should have been, we are inclined to concur in the view of the Circuit Judge that the action was one in the nature of a creditors' suit to marshal the assets of a deceased debtor and to require the executrix to account for the estate in her hands. And the action may be regarded as one to subject and sell real estate in aid of personalty for the payment of the debts of a decedent, and that action is close akin to a suit to marshal assets of a deceased debtor. In *Ragsdale v. Holmes,* 1 S. C., 91, it was held that specialty and simple contract creditors of a decedent need not exhaust their remedies at law before exhibiting a creditors' bill in equity against the executor of a decedent for an accounting of assets, payment of debts, etc. And it has been decided that the Court, on the petition of a creditor, as well as on the petition of the administrator, may order a sale of land in

aid of assets. *Scruggs v. Foot,* 19 S. C., 274. See, also, *State v. Foot,* 27 S. C., 340, 3 S. E., 546, and 24 C. J., 558. In the complaint in the case at bar, it was distinctly alleged that the personal property of the decedent was insufficient to discharge the debts against her estate, so the complaint looked to relief by the way of sale of realty in aid of personalty to pay debts.

The complaint here lacked, it is quite true, some of the matters usually alleged in a complaint in an action by creditors to marshal assets. It was not as full as the complaint in *Sheppard v. Green,* 48 S. C., 165, 26 S. E., 224, 227, but, as in that case, the main object of the suit was to have the assets of the testatrix marshaled and applied to the payment of her debts. In the *Sheppard case,* Chief Justice McIver, speaking of the right of persons with valid claims against the estate of a deceased person, said: "there can be no doubt that they are entitled to the aid of the Court in subjecting the assets of such estate to the payment of their debt; and, if any such assets have improperly or fraudulently gone into the hands of third persons, they may, in the same action, be brought back, and subjected to the payment of the debts of the testator. * * *"

*Hand v. Kelly,* 102 S. C., 151, 86 S. E., 382, is one of the most recent cases of this Court touching the questions under consideration. In that case, the Court held that the demurrer of the defendant to the complaint should have been sustained, because the instrument did not contain allegations which should have been made in a complaint in a creditors' action. The main objection to the plaintiff's right to proceed in that action, upheld by the Court, was because the validity of her claim had been attacked, and she sought in the Court of Probate to obtain a judgment in her favor, which Court was not the proper one, under the circumstances, for her to proceed in. Reviewing several cases, the majority opinion of the Court, written by Mr. Justice Gage, recognized, however, the right of a *sole plaintiff,* after his claim had been lawfully

established, to file a bill in equity and to enforce it against descended land, because the personal assets of the estate were insufficient.

An action to marshal the assets of a deceased person and to subject real estate to the payment of the lawful debts of such person is, of course, properly cognizable in a Court of equity; and the purpose of this action, as gathered from all the pleadings, was to accomplish those things.

The appellant makes this inquiry: *Should the complaint have alleged that the estate of Mrs. Montgomery was insolvent before a suit to set aside the deed made by her would lie?* What was already been said has practically answered this question. The action was not for the sole purpose of setting aside the deed. The demand that the deed be declared null and void, and the allegations upon which that demand was based, were merely incidental to the main purpose of the action, namely, to marshal the assets of the decedent and to subject them to the payment of the debts of her estate. If the action had been one *inter vivos* for the purpose of setting aside a voluntary deed, the insolvency of the grantor should have been properly alleged and established. The complaint here alleged all on the matter of insolvency necessary to be alleged, in our opinion, to wit, that the personal property of the deceased was insufficient to discharge the liabilities of her estate.

*The complaint contained no allegation to the effect that nulla bona return had been made on execution issued at the instance of any judgment creditor, or that any execution had, as a matter of fact, been issued; and there was no proof as to nulla bona returns on executions at the hearing of the cause. The appellant contends that there was error on the part of the trial Judge in his holdings that it was not necessary to allege or prove these matters.*

Formerly, there was some confusion, it appears, as to the necessity of alleging and establishing the return of a *nulla*

*bona* on an execution before a deed on the part of a debtor could be set aside at the instance of his creditor. The language of Chief Justice Simpson, in *Suber v. Chandler,* 18 S. C., 526, was apparently misunderstood by the members of the bar, and perhaps by some of our very able Judges. In that case, the distinguished jurist, not discussing the necessity of showing a *nulla bona* return, but considering the question of when the plaintiff's right of action accrued, in the course of his remarks, said this:

"Hence, it has been often held that a creditor, before attempting to assail the conveyance of his debtor, must not simply be apparently unable to secure payment otherwise, but must absolutely fail to do so after exhausting all legal effort to that end, by judicially establishing his debt *and having a return of nulla bona by the sheriff upon an execution issued thereon."* (Emphasis added.)

On account of the statement made by Chief Justice Simpson, it seems that some of the lawyers and Judges thought, *in all cases* to set aside a deed by an alleged insolvent person, it was necessary not only to prove, but to allege, the return of a *nulla bona* on the execution. Mr. Chief Justice Simpson himself cleared up some of this confusion in *Burch v. Brantley,* 20 S. C., 503. In that case, he said:

*"We know of no case in which it has been held that it is necessary to allege in the complaint a return of nulla bona before a creditor can assail a conveyance of his debtor for fraud. True, to vacate such conveyance, fraud must be alleged and proved, but a return of nulla bona constitutes no part of the fraud.* It is only evidence thereof, which, with other facts, may show the fraud. It is one of the probative facts by which the fraud may be developed, but it is no part of the essence of the fraud, and, consequently, *not necessary to be alleged.* The allegation that the deed was founded in fraud, opens the door to the introduction of all testimony within the possession of the assailing party bearing upon that question, *and such testimony may be adduced without any*

*specific allegation of such facts.* The charge of fraud renders admissible all testimony necessary to sustain it.

*"There is nothing, either in Verner v. Downs, 13 S. C., 449, or Suber v. Chandler, 18 S. C., 526, in conflict with these views.* In *Verner v. Downs* the Court held, "that a judgment-creditor is not entitled to a decree adjudging a deed of conveyance, made by his debtor, to be fraudulent until there has been return of *nulla bona* to an execution issued upon the judgment,' and there being no evidence in the case of such return, and the plaintiff not claiming that such evidence could be supplied, the complaint was dismissed. It does not appear that the allegation of a return of *nulla bona* was made in the complaint, nor was the complaint dismissed because of such omission; but, on the contrary, it was dismissed because there was no testimony to that fact at the trial; and, further, because there was no offer to supply the deficient testimony. The case evidently turned on a deficiency of testimony at the trial, and not deficiency of allegations in the complaint.

*"Neither did the case of Suber v. Chandler rule anything as to the necessity of alleging a return of nulla bona in the complaint."* (Emphasis added.)

In *McMahan v. Dawkins,* 22 S. C., 314, in the evident effort to further clear up the confusion as to *nulla bona* returns, Chief Justice Simpson used this language:

"We think the Judge was right in holding as to the equity cause that the action could not be maintained in the absence of a *nulla bona* return on plaintiff's execution before commencing it. *Suber v. Chandler, supra. It is a general rule, established and held in many cases, that in actions by creditors in equity to vacate voluntary deeds and conveyances of their debtors, inter vivos, to entitle them to proceed, they must have first exhausted their legal remedies. That this is the only ground upon which they can come into equity, and while it is not necessary to allege in the complaint a return of nulla bona, yet that is the sufficient evidence of the fact that*

*all legal remedies have been exhausted.* It is, too, one of the probative facts which shows the necessity under which the plaintiff is to resort to the property covered by the deed which he seeks to set aside, and it is the foundation for the charge of legal fraud on account of which such deeds are frequently assailed. It must appear, therefore, in the evidence, or the action will fail. It was not proved in this case. The Judge could not do otherwise then than dismiss the complaint as to the first cause of action."

The case of *National Bank v. Kinard,* 28 S. C., 101, 5 S. E., 464, 467, sought to set aside a voluntary deed made by a grantor to his wife and sons. Chief Justice Simpson again spoke for the Court. It is not necessary to quote all he said, but we take several excerpts from his opinion. Speaking in a way of the distinctions between *legal fraud* and *actual, positive,* or *moral fraud,* and of the necessity of proving a *nulla bona* return on an execution, these principles were announced:

"But before a right of action accrues, this legal fraud must be developed, and, if at that time the creditor can sue, the currency of the statute will commence. How is this fact to be developed? *This Court has held that, inter vivos, the only way to develop it, so as to have a cause of action in equity to vacate the voluntary deed, is by exhausting all legal remedies, and to have a nulla bona return by a judgment creditor on his execution issued on said judgment;* that then, and not till then, does his right of action accrue, and then, and not till then, is the Statute of Limitations set in motion against him. See *Verner v. Downs,* 13 S. C., 451; and *Suber v. Chandler,* 18 S. C., 533. \* \* \*

"*We do not think that any case can be found which weakens the doctrine of Verner v. Downs and Suber v. Chandler, as applicable to voluntary conveyances, free from postitive and intended fraud.*

"True, it was held in *Ragsdale v. Holmes,* 1 S. C., 91, that *it was not necessary that specialty and simple contract credi-*

*tors of the estate of a decedent should exhaust their remedies at law, before exhibiting a creditors' bill in equity against the executors of the decedent for an account, etc.,* for the satisfactory reason that the assets of the decedent become at once liable for all his debts, upon his decease, the debts to be paid in a certain order. *But the case before us is not a case for an accounting against the representatives of W. M. Kinard, deceased, or for the settlement of his estate, by marshaling the assets.* It is a case to remove an obstacle in the way of plaintiff to making certain property liable to their debt, in which property the wife and children set up an opposing interest under a deed executed by W. M. Kinard in his life-time. *It is in fact a case inter vivos, assailing a voluntary conveyance, unimpeachable for positive fraud, where the doctrine of judgment and a return of nulla bona is admitted by all to be applicable.*" (Italics added.)

In *Harmon v. Wagener,* 33 S. C., 487, 12 S. E., 98, 100 (cited by the learned Circuit Judge to sustain his holding), Mr. Justice McGowan, speaking for the Court, said this:

"It was urged that the Judge had no jurisdiction to grant equitable relief, including the appointment of a receiver, for the reason that the creditors had not first exhausted their legal remedies, which could only be shown by proof of an execution obtained on the law side of the Court, with a return upon it of *nulla bona,* which was not shown. There is such a doctrine applicable to cases *inter vivos,* but, as we understand it, this rule of evidence has no application to a 'creditors' bill,' to marshal the assets of the estate of a deceased debtor. *It is quite clear that a creditor may file what is known as a 'creditors' bill' against the executor of his dead debtor, to make him account for the estate in his hands, without having first obtained a judgment upon the law side of the Court, and procured upon it a return of nulla bona.*" (Emphasis added.)

In *Miller v. Hughes,* 33 S. C., 530, 12 S. E., 419, 421, in an action brought to set aside a deed because of *positive fraud,* Mr. Justice McIver, speaking for this Court, said:

"But we do not agree that in a case like this it was essential to allege that the plaintiffs had recovered judgment, and obtained a return of *nulla bona* on their execution. While *it is quite true that such an allegation is necessary in a complaint to set aside a voluntary conveyance upon the ground of legal fraud merely,* for the reason that in such a case there is no fraud, which is the real foundation of the action, until it has been made to appear that the debtor has no other property to which his creditor may resort for payment of his debt except that embraced in the voluntary conveyance; and this it is supposed can best be shown by the return of *nulla bona.* See the remarks of Chief Justice Simpson in reference to this subject in *Suber v. Chandler,* 18 S. C., 526. *But where the conveyance or other transfer is assailed upon the ground of actual, moral fraud in its inception, the case, as it seems to us, stands upon a totally different footing, and should not be subject to the same arbitrary rule in regard to the mode of proof of one of the facts necessary to be established; for it certainly is an arbitrary rule that the fact that there is no other property of the debtor to which the creditor can resort for satisfaction of his demand except that embraced in the fraudulent conveyance can only be established by a nulla bona return.* (Emphasis added.)

At the time of the decisions in the *Harmon* and *Miller cases,* the Court was composed of Chief Justice Simpson and Associate Justices McIver and McGowan. It is possible that Chief Justice Simpson did not take an active part in the decisions of these cases, since he died on December 26, 1890, and the opinions in those cases were handed down respectively on October 24, and December 8, 1890. Even if he did not do much in rendering those decisions, however, it is most likely that Justices McIver and McGowan, who had associated with Chief Justice Simpson for so many years, were well acquainted with his views on the subject under consideration, and had in their minds, when writing the opinions referred to, the former expressions of the Chief

Justice. In fact, it is to be noted that references were made to some of the Chief Justice's former opinions, and particularly what he had said in *Suber v. Chandler, supra.*

Citing *Miller v. Hughes, supra,* this Court, through Chief Justice Gary, made this concise statement:

"The complaint shows that the action was instituted under Section 2369 of the Code of Laws (1902), commonly known as the Statute of Elizabeth, and was for actual fraud. Therefore it was not necessary for the plaintiffs to prove a *nulla bona* return on the execution in order to establish the fact of insolvency, which could be shown by any other competent testimony." *Anderson Hardware Co. v. Gray,* 94 S. C., 80, 77 S. E., 742, 743.

There are many other cases touching, in varied manner, the question before us, but it is not required that we review them. Most of the leading cases have had our attention.

The failure to understand clearly when it is necessary, and when not essential, in an action by a creditor to set aside a deed for fraud on his rights by the grantor and grantee, to allege and prove a *nulla bona* return, is due, we think, to the failure to properly distinguish between *legal or constructive fraud* and *actual or positive* fraud. A careful reading of the cases we have cited will show these distinctions clearly; and it is not necessary here to discuss them. Perhaps "legal fraud" is an unfortunate term and the Courts should adopt some other expression in its stead.

In seeking the correct principle, from the cases examined, applicable to the issue here being discussed, we should, in reading those cases, be sure to understand first the nature of the action that was before the Court. Was it one to set aside a voluntary deed, resulting in a *legal* or *constructive* fraud? Or was it one attacking the instrument for *actual* or *positive* fraud? Or was it a creditor's bill, to subject the assets of the estate of a deceased person to the payment of debts, or one to sell real estate, in aid of personalty, to pay debts, or to

procure an accounting from an executor, etc.? When the class to which the action belongs is properly understood, we think there is little difficulty to be found in understanding and distinguishing the several decisions.

After a thorough reading of the cited cases, we find ██ in them only one conflict in the holdings made. In *McMahan v. Dawkins, supra,* Chief Justice Simpson, speaking of actions to set aside voluntary conveyances, said to maintain such actions it was essential to produce evidence of the *nulla bona* return, but he indicated that "it is not necessary to allege in the complaint a return of *nulla bona.*" In *Miller v. Hughes, supra,* decided later than the *McMahan case,* Mr. Justice McIver stated, concerning an action to set aside a voluntary deed for *legal fraud,* "It is quite true that such an allegation is necessary" in the complaint. If, as it seems, there is a real conflict in these respective holdings, we are of the opinion that the one last mentioned has, in effect, overruled the former. We are led, too, to agree with the announcement of Mr. Justice McIver in *Miller v. Hughes.* One of the main reasons, if not the sole reason, for equity taking jurisdiction of an action, where a creditor seeks to recover his debt from his debtor, ordinarily an action at law, is because, on account of the existence of the voluntary deed, not made in bad faith, adequate relief cannot be given at law. The usual rules of pleading require a party to set forth in his complaint the allegations of fact necessary to be established, that his cause may be sustained. The essential fact to give a Court of equity jurisdiction in a cause ordinarily maintainable only at law should appear, by proper allegation in the complaint, in our opinion.

Summarizing briefly the holdings in the cases reviewed, and where there is conflict, seeking to clear it up, we conclude:

(1) The law requires in an action by a creditor ██ *solely* to set aside his debtor's *voluntary deed, for legal fraud,* allegation and proof that the debt was

reduced to judgment, execution issued to enforce the collection of the judgment, and a *nulla bona* return on the execution by the sheriff.

(2) In an action by a creditor, to set aside his debtor's deed, based on *actual or positive fraud,* it is not necessary to allege or prove a *nulla bona* return, nor even to reduce the debt to judgment.

(3) To institute or maintain a creditor's suit to marshal the assets of his deceased debtor, or in an action to sell realty in aid of personalty to pay debts, it is not required that there be any *nulla bona* return, or execution, or judgment.

(4) The *nulla bona* return in any of the cases mentioned above is *some evidence* of insolvency of the debtor, and the impossibility of the creditor to collect his debt *at law;* and, when nothing else appears to the contrary, this evidence is *conclusive* as to those matters.

The complaint in this case alleged, as we read it, that the deed sought to be set aside was a voluntary deed. There was no allegation tending to show any actual, positive, or moral fraud on the part of the appellant, or her grantor. In this connection, it is a pleasure for us to be reminded that at the bar of this Court, both of the counsel, who appeared for the respondents, distinctly assured the Court and the appellant and her counsel that no fraud of the last-mentioned kind was charged or even insinuated. If the pleadings had not shown that the Court was asked to do other things in relation to the estate of the deceased than to set aside the deed described in the complaint, it would logically follow that we would be compelled to reverse the holding of the Circuit Judge that proof as to the *nulla bona* was not required. But, as we have before shown, the Circuit Judge properly held, under the pleadings, that the action was one on the part of creditors to marshal the assets of their deceased debtor. The cases cited, particularly *Harmon v. Wagener, supra,* sustain the conclusion reached by the trial Judge.

The other questions raised by the appeal concern only concurrent findings of fact by the Circuit Judge and the referee. The exceptions making these questions challenge the findings of fact to the effect that Mrs. Montgomery was insolvent at the time of the conveyance to her daughter, the defendant; the insolvency of the estate at the time the action was commenced; that the deed was without valuable consideration and resulted in hindering and delaying the creditors; the valuation of the conveyed property as fixed at the sum of $18,000; that the second assignment of certain securities to Farmers' & Merchants' Bank was worthless, as the securities had been exhausted by the holder of the first lien; and that the named bank was not estopped to claim any benefit from the setting aside of the deed.

In reviewing these findings, we are guided by the rule, now so well implanted in our law, that it is no longer necessary to cite any case to support it, that it is incumbent upon the appellant to show error in the findings of fact of the referee, concurred in by the trial Judge.

We think it would be a useless waste of time, with no benefit resulting to any of the parties or to readers of our opinions, to attempt to recount the evidence in the cause. We are convinced from a careful examination of that evidence that Mrs. Montgomery, a gentlewoman with proper motives and desires, who had already devised to her faithful, comforting, and loving daughter, the defendant, all of her estate, sought to "make assurance doubly sure" that this daughter would receive the old homestead property, without the possibility of interference from any of her other children. And we are equally sure that the defendant, when she accepted the deed, full of optimistic hopes, did not contemplate any actual, positive, or moral fraud upon any of her mother's creditors. The unfortunate depression, which has come upon our people, affecting particularly owners of city real estate in many instances, and laying its heavy hand upon the owners of farm lands, has tended to depreciate to an almost unheard

of extent the values of these classes of property. The result to the defendant and to her mother's estate has been disastrous, as it has likewise involved many thousands of our good people.

The evidence in the transcript of record sustains the findings of fact of the special referee and the Circuit Judge. Much of that evidence came from the truthful lips of the defendant, who testified only as a woman of her high character could, and would, have testified.

Recently, this Court in *Miller v. Erwin,* 129 S. C., 415, 125 S. E., 36, 38, quoted with approval the language of the beloved Chief Justice McIver in *Jackson v. Lewis,* 34 S. C., 1, 12 S. E., 560, as follows:

"A voluntary deed may be set aside at the instance of an existing creditor upon the ground of constructive or legal fraud, even where there is not the slightest taint of actual or moral fraud in the transaction, under the principle that the law requires that one must be just before he is generous. The law will not permit one who is indebted at the time to give his property away, provided such gift proves prejudicial to the interest of existing creditors. The motive which prompts the donor to make the gift is wholly immaterial. If the donor is indebted at the time, and the event proves that it is necessary to resort to the property attempted to be conveyed away by a voluntary deed for the purpose of paying such indebtedness, the voluntary conveyance will be set aside and the property subjected to the payment of such indebtedness, upon the ground that it would otherwise operate as a legal fraud upon the rights of creditors, even though it might be perfectly clear that the transaction was free from any trace of moral fraud."

A repeated and careful study of the decree of Judge Townsend is convincing that he sought in every possible way to do equity and justice in the cause to all the creditors of the estate of Mrs. Montgomery and to the daughter, whom she desired to reward and protect. The property conveyed to

the defendant by her mother is to be sold only when it is absolutely necessary to pay the debts of the mother's estate. And the daughter's rights to homestead exemptions in all the property are reserved according to the law of our State. The decree discloses that the honored Circuit Judge was guided by the well-founded principle that "one must be just before he is generous." The mother of the defendant, if here now, would approve that principle. On a little reflection, the defendant will recognize fully and follow it.

The judgment of this Court is that the decree of the Circuit Judge be, and the same is hereby, affirmed.

MESSRS. JUSTICES COTHRAN, STABLER and CARTER concur.

MR. CHIEF JUSTICE WATTS did not participate.