### NATIONAL BANK OF NEWBERRY v. KINARD.

1. Parol testimony may be received from a sheriff to authenticate the entries endorsed on an execution and to prove that property levied upon had not been sold.
2. The mere fact that an application for homestead had been made may be proved by parol.
3. The presumption of law that a levy amounts to satisfaction may be rebutted.
4. Pending two actions for foreclosure the mortgagor sold the mortgaged land to the senior mortgagee and the court confirmed the sale and ordered the proceeds applied to the mortgages according to their rank. *Held*, that this was practically a foreclosure sale, and that nothing was left in the mortgagor subject to judgments against him.
5. Personal property covered by a chattel mortgage is not liable to junior executions against the mortgagor.
6. Where a deed is voluntary but not executed for the purpose of defraud-

ing creditors, no action lies to set it aside until by return of *nulla bona* it is legally shown to operate as a legal fraud on creditors. Until then the statute of limitations does not begin to run.

7. In such case it is not necessary to allege in the complaint discovery of the fraud within six years, that period not having elapsed since the return of *nulla bona.*

8. Action against the widow and children of a deceased debtor to set aside a voluntary deed made to them by him in his life-time and while indebted, is an action *inter vivos* and not an action for the settlement of the estate of a decedent.

9. Delay in procuring a return of *nulla bona* is not *laches* on the part of the creditor.

10. A finding of fact by the Circuit Judge from testimony heard by him, approved. Vague testimony not sufficient to show a consideration other than that expressed in the deed.

11. A sheriff's return is not invalid because not sworn to nor made to a regular term of court.

12. A creditor may institute his action notwithstanding the pendency of another action by another creditor.

13. The Court of Common Pleas may adjudicate the right to homestead in a case otherwise properly before it.

14. Petition for rehearing refused.

Before KERSHAW, J., Newberry, May, 1886.

This was an action by the National Bank of Newberry, a judgment creditor of W. M. Kinard, deceased, with return of *nulla bona*, in behalf of itself and other creditors, to set aside for fraud a voluntary deed by said Kinard to his wife and children. The return of the sheriff was not sworn to, nor did it purport to be made to a regular term of court.

During the progress of the hearing before the Circuit Judge, objection was interposed to the complaint upon the ground that it appears upon its face that it does not state facts sufficient to constitute a cause of action—the objection being that the laws of pleading require that it should be shown on the face of the complaint that the fraud constituting the cause of action did not come within the knowledge of the plaintiff during the statutory period. After argument the court overruled the demurrer.

The Circuit decree, omitting some of the facts restated in the opinion of this court, was as follows:

The property of John P. Kinard, levied on in these cases, was

swept away by the enforcement of older mortgages thereon, and by the setting off a homestead in the personal property, and a return of *nulla bona*, December 9, 1879, was entered on all these executions by the then sheriff, though the executions were in fact not returned to the clerk's office until April 24, 1884.

From 1876 to the commencement of this action, the case of Pelzer, Rodgers & Co. was pending against John P. Kinard and all the present defendants, seeking among other things to set aside the deed of W. M. Kinard to Sallie Kinard, attacked in this case for fraud against the creditors. It was like this, a creditor's bill, and the pendency of that action is pleaded herein by the defendants. The plaintiffs were not parties thereto, and the plea cannot therefore avail.

Wm. M. Kinard died April 3, 1877. Letters of administration on his estate were granted to the defendant, Ebenezer P. Chalmers, October 4, 1877. The present action was commenced April 26, 1884. On November 25, 1875, the said Wm. M. Kinard conveyed to his wife, Sallie E. Kinard, in consideration of natural affection and of five dollars recited as paid in his said deed to her of that date, the real estate described in the complaint herein, consisting of three tracts, the Reid place containing four hundred acres, the Chalmers' tract two hundred and forty acres, and the McMorries' tract three hundred and fifty acres, more or less; together with two horses, seven mules, six hogs, fifteen pigs, six cows and three calves, one buggy, three wagons, 150 bushels of corn, 4,000 lbs. fodder, also sundry articles of household and kitchen furniture, cotton seed, farming implements and gear, and all his personal property, then on the said lands. "To have and to hold . . . to the sole and separate use of my said wife, Sallie Elizabeth Kinard, for and during her natural life, and at her death to vest in fee simple in John M. Kinard and William M. Kinard, and such other children as may come unto me by the said Sallie Elizabeth Kinard." The said deed was duly recorded soon after its execution.

Sallie E. Kinard died soon after the commencement of this action, leaving one child only surviving, the defendant, Wm. M. Kinard, the other son having predeceased his father, unmarried.

Wm. M. Kinard, the father, died before this action was brought, insolvent and without leaving any assets except the property mentioned in said deed, which was claimed at his death by the said Sallie E. Kinard, and consequently no assets have ever come to the hands of the defendant Chalmers as administrator. The complaint seeks to set aside the said deed as fraudulent and void against the plaintiff and all other creditors of the said William M. Kinard, deceased, who may elect to come in and share the expenses of the action. It does not appear that any other creditors have come in to aid the plaintiff.

Among other defences set up by the answers is the statute of limitations. Notwithstanding some confusion in the cases, I am constrained to hold that the law as laid down in *Verner* v. *Downs* and *Suber* v. *Chandler* applies in this case.

In the former case (13 *S. C.*, 451), the court says * * *. Without laying stress upon the reason assigned for the rule, there can be no question that the decision is very clear and positive, that there is no right of action in equity in such cases until a return of *nulla bona* is had.

But the case of *Suber* v. *Chandler* is conclusive and satisfactory both in its statement of the law and the reason given for it. (18 *S. C.*, 528.) The court says * * *. The court holds that there is no right of action in such a case until such return, and that the right of action determined the application of the statute of limitations. It had no currency until that right accrued.

The case of *Gregory* v. *Rhoden*, 24 *S. C.*, 90, is supposed to have decided that in a case like this the rule does not apply. That case was brought with the double purpose of marshalling the assets of the deceased debtor and as an incidental thereto, to set aside his deed to the widow, Margaret. The court says, "To enable him to institute such a proceeding it was not necessary that the creditor should have a judgment at all. He might file a creditor's bill upon a simple note of the deceased. The appellant had the same right to institute this proceeding at the death of his intestate, Richard Gregory, as now," &c. But this is not an action of that character. It is neither an action to marshal the assets of a deceased debtor nor to subject lands descended to the

heir to the payment of the ancestor, but an action to set aside a deed not founded on a valuable consideration, the effect of which has been to defeat the rights of creditors at law. This could not be done until there was a return of *nulla bona* to the execution.

Applying this law to this case it appears that the action is not barred by the statute, and the plea is accordingly overruled. There are other circumstances urged to sustain the plea of *laches* and lapse of time, but these may be disposed of by the remarks of the learned Chief Justice in *Suber* v. *Chandler* (18 *S. C.*, 533), where it is said in regard to the plaintiff, "There was no law which required that he should hasten proceedings in another and independent matter in order to create a cause of action against the defendants." The delay in procuring here a return of *nulla bona* cannot affect the plaintiff's right of action or furnish a ground for imputing to it *laches*.

If not barred by lapse of time, the plaintiff must prevail. The conveyance in question was made after the debt to the plaintiff was contracted. It appears to have embraced all the property of the donor. This debt cannot be provided for without avoiding the deed and resorting to the property conveyed therein. There is nothing in the alleged investment of his wife's funds in the property. At the very best, it amounted to the use of his wife's money to pay for the property he had previously bought. In such a case there would be no resulting trust. Something has also been said about the negligence of plaintiff in not making other efforts to make the money out of John P. Kinard and Thomas F. Harmon, and the consequent discharge of the surety, William M. Kinard, thereby. No such case has been made out as could have that effect in any view of the testimony.

Various objections were made to the return of *nulla bona* as informal and insufficient, but none of them in my opinion can avail the defendant. It is also claimed that the defendant, W. M. Kinard, being a minor, is entitled to a homestead in the premises, and that should be allowed him if the deed be set aside. In regard to this claim, according to the principles decided in the cases on this subject, this court is without jurisdiction to

determine the rights of the claimant and must decline to make any order in reference thereto. *Ex parte Lewie*, 17 *S. C.*, 156.

It is adjudged and decreed, that the deed of conveyance dated November 25, 1875, made by William M. Kinard, deceased. to Sallie Elizabeth Kinard and her children, conveying the lands described herein and the personal property therein mentioned, was made in fraud of creditors and is in law fraudulent as against the creditors of the said William M. Kinard, deceased, and that the same be set aside and declared void as to creditors. * * *

The infant defendant appealed upon exceptions which raised the points considered by the court.

*Messrs. Jones & Jones* and *G. S. Mower*, for appellant.

*Messrs. Y. J. Pope* and *Suber & Caldwell*, contra.

February 18, 1888. The opinion of the court was delivered by MR. CHIEF JUSTICE SIMPSON. The respondent obtained a judgment in October, 1876, against John P. Kinard, William M. Kinard, since deceased, and Thomas F. Harmon, for the sum of $2,691.73 with interest from said date, and $25 costs, on note previously executed, to wit, on October 8, 1875, by the said John P. Kinard to the said William M. Kinard, and which had been indorsed by the said William M. and the said Thomas Harmon to the respondent, who discounted it, and thereby became the owner thereof. Some time between the date of the note and respondent's judgment, William M. Kinard by voluntary deed conveyed his entire property, real and personal, in Newberry County, where he then lived, to his wife, the said Sallie E. Kinard, for her life, and at her death to vest in fee simple in his two sons, John M. and William M. Kinard, and such other children as might be born to him by the said Sallie, share and share alike.

The action below was instituted by the respondent in its own behalf, and for such other creditors of William M. Kinard as might come in and contribute, &c., to have said conveyance adjudged fraudulent and void as to said judgment of respondent,

and others, creditors, and to have the property sold, and the proceeds applied to respondent's debt, &c. Mrs. Sallie E. Kinard answered, denying that the deed was without consideration, and alleging that it was executed because a large portion of the purchase money of the land described in the complaint was paid with her money under an agreement between herself and husband, that the title thereto should be made to her. She also set up a claim to a portion of the personal property and she interposed the statute of limitations. John Mayer Kinard, the minor son, answered by guardian *ad litem*, denying every allegation of fraud, and interposing the pendency of another action to set aside the said deed and also the statute of limitations. The other son had died before action brought.

The case was heard by his honor, Judge Kershaw, upon testimony taken before him, who overruled the statute of limitations, and ordered the conveyance to be annulled and vacated as made in fraud of creditors; and that the property both personal and real be sold, the proceeds, after expenses, costs, and taxes, to be applied to plaintiff's judgment, the balance, if any, to be retained for distribution among such creditors of William M. Kinard, deceased, as might come in and prove their claims, &c. The minor, William Mayer Kinard, erroneously called John Mayer Kinard in the pleadings, has appealed upon 24 exceptions. These exceptions, however, need not be discussed separately, because many of them may be grouped together, as raising the same question. Without reference, therefore, to each exception, we find the following points before us:

1st. Whether his honor erred in admitting certain testimony.

2nd. Whether he erred in holding that the levy upon the property of John P. Kinard had been sufficiently explained, so as to prevent the presumption of payment of plaintiff's judgment arising from such levy. And in holding also that plaintiff had exhausted all legal remedies for the collection of its debt out of the property of the said Kinard.

3rd. Whether he erred in overruling the plea of the statute of limitations, and in holding that the plaintiff had not been guilty of such *laches* as would preclude the relief demanded.

4th. Whether he erred in finding "that there was nothing in

the alleged investment of his wife's funds in the property" by W. M. Kinard.

5th. Whether he erred in deciding that a return of *nulla bona* on plaintiff's execution had been proved.

6th. Because his honor declined to decide the question as to the right of the infant defendant to a homestead in the deeded property.

7th. Whether he erred in setting aside the deed as to the personalty.

And 8th. Whether he erred in overruling the plea of the pendency of the suit of *Pelzer, Rodgers & Co.* v. *John P. Kinard, et al.*

Under the 1st point appellant complains that certain testimony of one D. B. Wheeler, former sheriff of Newberry County, was admitted. This testimony seems to have been nothing more than that he had made certain entries which appeared on the execution of plaintiff, that one Glenn had been his deputy, and that the property levied had not been sold. We do not know by what rule of evidence this testimony should have been excluded. In the argument, the only reason assigned was that the code prescribed the method by which a return on execution should be made and that this did not include parol statements of the sheriff. We do not understand that the testimony of the sheriff was in substitution of the method of the code. It was simply authenticating the entries indorsed on the execution. True, the sheriff is required (section 311 of the Code) to make return of his actings and doings under executions in his office at each regular term of the court from which they were sued out, and some times under oath, to wit, when partially executed, &c., but whether he does his duty in this respect or not, could furnish no reason why he should be held incompetent to prove that the indorsements appearing on the execution were made by him, or that he had not sold the property levied on, as independent facts.

Appellant next complains of the admission of the testimony of one Glenn, as to application for a homestead by John P. Kinard, contending that the papers should have been produced as the best evidence. This, perhaps, was true as to the contents in the absence of testimony of the loss of the papers. The evidence here was

not in reference to the contents, but as to the fact that such application was made preparatory, perhaps, to proof of loss, so that contents might be proved by parol.

Appellant next complains that his honor erred in not holding that the debt of plaintiff had been satisfied by the property of John P. Kinard, levied upon by the execution. It is a presumption of law that a levy amounts to satisfaction, unless it be shown that it was insufficient or that the proceeds were applied to some prior lien, or was otherwise unproductive, without fault of the judgment creditor. *Davis* v. *Barkley,* 1 *Bail.,* 142 ; *Mazyck & Bell* v. *Coil,* 2 *Id.,* 102 ; *Lawrence* v. *Wofford,* 17 *S. C.,* 586. And in cases of levy upon land where it has been consummated by sale, and then only to the extent of the proceeds realised. Now, the property levied upon here was certain personal property and a tract of land containing 2,200 acres. This property was levied upon, and this was indorsed upon the numerous executions in the sheriff's office, and upon all at the same date—said executions amounting to a large sum—over $10,000.

As to the land, that was covered by two senior mortgages, upon which proceedings for foreclosure were in progress, and during the pendency of which John P. Kinard, mortgagor, sold said land to Koon, one of the mortgagees, for $11,145.75, which sale was confirmed by the court in a special order by his honor, Judge Aldrich, in said foreclosure proceedings, and the proceeds directed to be applied to the Koon mortgage, the senior lien, and the balance, to wit, $2,458.72, to the Pelzer, Rodgers & Co. mortgage, assignee of Robert L. McCaughrin. This, it seems to us, was substantially a foreclosure sale, and carried the whole interest therein of John P. Kinard, leaving nothing subject to his judgment creditors. This disposes of the land.

The personal property levied upon consisted of sixteen mules, one mare, eight cows, four calves, two waggons, one carriage, two buggies, six hogs, household and kitchen furniture, contents of store ; also two hundred and fifty bushels of corn, his interest in seven bales of cotton, and all of his interest in the growing crops, the levy bearing date October 19, 1876. It appears in the evidence that the mules had been mortgaged to R. L. McCaughrin on May 15, 1876, before any judgments had been obtained.

At the time of the levy there were executions in the office against John P. Kinard, amounting in the aggregate to some $10,000, which reduced by the payment on the Pelzer, Rodgers & Co. judgment of $2,500, balance of proceeds of land on sale to Koon, left some $7,500.     The sixteen mules, it seems, were covered by the senior mortgage to McCaughrin, and were not liable to the executions.     As to the remainder of the personalty, there is no satisfactory evidence of its value, or what disposition was made of it.     In the absence of proof the law would presume that it had been sold and the proceeds applied to the levying *fi. fa.'s pro rata*.     It would certainly be a very violent presumption that the small amount of personalty mentioned in the levy, left after taking out the mules, had satisfied in full the large amount of indebtedness represented in the executions, but it does not appear to us that the testimony was sufficient to hold that the whole of it had been swept away by prior liens.     We think that defendant was entitled to have a *pro rata* portion applied to plaintiff's judgment.

Next, the question of the plea of the statute of limitations is raised, and also whether plaintiff was barred by *laches*.     As a general rule, the statute of limitations begins to run when the right of action accrues, excepting where the party wronged is laboring under certain disabilities, so that in all cases where the statute is plead, the first question to determine is, when did the right of action accrue ? and secondly, was the party in condition to sue, or was he under some legal disability ?     Now, the action below was an action by a creditor seeking to set aside a deed of his debtor in order to make the property embraced liable for his debt.     Actions of this kind may, and usually do, belong to one of two classes : 1st. Where a deed has been executed by a debtor with the view and for the purpose of defeating his creditors, thereby perpetrating a direct, intended, and positive fraud.     2nd. Where a voluntary deed founded upon the consideration of love and affection, or to promote some laudable and commendable purpose, is executed by a debtor, and it turns out afterwards, because no other property can be found, that the property embraced in said voluntary deed should become liable for the debts existing at the time of its execution.

We think this case belongs to this latter class, and without stopping to indicate when the right of action would accrue in the former class, that question not being involved here, we think that as to the latter class no right of action would accrue until the necessity for reaching the property conveyed, is developed legally. This is so, because fraud is the foundation of the action, it is in fact the cause of the action, and fraud must occur before the action can be commenced—before a right of action accrues. Now, a voluntary deed based on love and affection, or some other laudable consideration, is not necessarily fraudulent, and, therefore, such deed cannot be alleged to be fraudulent at its inception, nor does a right of action accrue then to subsisting creditors to vacate it at that moment. Such deed, however, may become a legal fraud in the future if no other property of the debtor can be found out of which the creditor may make his debt, on the principle that the law requires a man to be just before he is generous, which forbids the debtor giving away his property to the prejudice of his subsisting creditors.

But before a right of action accrues this legal fraud must be developed, and if at that time the creditor can sue, the currency of the statute will commence. How is this fact to be developed? This court has held, that *inter vivos* the only way to develop it, so as to have a cause of action in equity to vacate the voluntary deed, is by exhausting all legal remedies and to have a *nulla bona* return by a judgment creditor on his execution issued on said judgment. That then, and not till then, does his right of action accrue, and then and not till then is the statute of limitations set in motion against him. See *Verner* v. *Downs*, 13 *S. C.*, 451, and *Suber* v. *Chandler*, 18 *Id.*, 533. In *Verner* v. *Downs*, a fraudulent deed had been annulled, upon action commenced without a return of *nulla bona*. The Supreme Court set aside the judgment, because there had been no such return, and after discussing the reason of the rule requiring such return used the following language: "Hence it is that the Courts of Equity have held as a rule of convenience, founded on the clearest reason and equity, that the plaintiff *must* issue his execution and procure its return before applying to the Court of Equity for relief. Having failed to show in the present case that this step has been taken,

the evidence shows no equity in the plaintiff to demand the decree that has been pronounced, and it must be reversed."

It is admitted that this doctrine was held in these cases, but it is contended that it has been modified and weakened since, by our subsequent cases of *Bird* v. *Calvert*, 22 *S. C.*, 292, and *Austin, Nichols & Co.* v. *Morris*, 23 *Id.*, 393. A short examination of these cases will show that they do not sustain appellant's counsel in the effect which he suggests as to the previous cases *supra*. Calvert and Bird, was a case against a member of an insolvent corporation under a provision of the charter which made the corporators liable to the extent of 5 per cent. upon their stock for the debts of the company. It did not appear that all legal remedies by execution and return of *nulla bona* had been exhausted against the corporation. But it was held that the decision of this question was not involved in the case, and while Mr. Justice McGowan, in discussing that question did say incidentally, "that it was not quite clear that judgment and unsatisfied execution would be inexorably required under *all circumstances*," yet he said that they "were undoubtedly usual and perhaps the most satisfactory"; but further he said : "Be that as it may, it seems to us clear that this is not a case belonging to the class mentioned," where that principle was applicable, "and where the debt was enforceable only after judgment and return of *nulla bona* on the execution against the corporation." So that the question here was not involved there in the remotest degree, the case turning as it did upon a very different principle.

A single quotation from the other case, of Austin, Nichols & Co., which was announced after the case of Calvert and Bird, and written by the same justice, will show the position of the court. "There is no doubt," said the justice, "that such *judgment and return are necessary* when the conveyance is assailed as merely *voluntary*, for in such case it cannot appear that any wrong has been done until it is shown that the debtor has not the means of paying the debt with property other than that covered by the contested conveyance"—citing *Suber* v. *Chandler*. *Austin, Nichols & Co.* v. *Morris*, was not a case arising upon a voluntary conveyance. And, besides, it was under the assignment act, which in one of its sections dispenses with the necessity of

judgment and *nulla bona* return.   We do not think that any case can be found which weakens the doctrine of *Verner* v. *Downs*, and *Suber* v. *Chandler*, as applicable to voluntary conveyances, free from positive and intended fraud.

True, it was held in *Ragsdale* v. *Holmes*, 1 *S. C.*, 91, that it was not necessary that specialty and simple contract creditors of the estate of a decedent should exhaust their remedies at law, before exhibiting a creditor's bill in equity against the executors of the decedent for an account, &c., for the satisfactory reason that the assets of the decedent become at once liable for all his debts, upon his decease, the debts to be paid in a certain order. But the case before us is not a case for an accounting against the representatives of W. M. Kinard, deceased, or for the settlement of his estate, by marshalling the assets.   It is a case to remove an obstacle in the way of plaintiff to making certain property liable to their debt, in which property the wife and children set up an opposing interest under a deed executed by W. M. Kinard in his life time. It is, in fact, a case *inter vivos* assailing a voluntary conveyance, unimpeachable for positive fraud, where the doctrine of judgment and a return of *nulla bona* is admitted by all to be applicable.

It is urged that it has been held in this State, that in cases of this kind it is necessary for the plaintiff to allege in his complaint that he discovered the fraud within the statutory period before the commencement of the action, or upon failure to make such allegations the *onus* is upon him to prove that he so discovered it, upon peril of being presumed to have known it from the execution of the instrument assailed.   This, no doubt, is good law, when applied to cases to which it is applicable, to wit, to cases where the fraud attached at the execution and the party was free from disability.   But in cases like that before the court where the execution of the paper was free from fraud in its inception, and otherwise valid at that time, and a legal fraud is superinduced by subsequent events and attaching at the occurrence of such events, it cannot be presumed to have existed from the execution because of the failure to allege, as suggested—the execution as matter of fact being free from fraud.   Whether if the statutory period should expire between the return of *nulla bona* and the

beginning of the action, a failure to aver discovery within the period would have the same effect, is not necessary to be determined in this case.

We see no sufficient evidence of *laches*. The appellant could not attack the deed until his legal remedies had been exhausted, and we know of no rule of law which required plaintiff to have his execution returned *nulla bona*, sooner than when it was so returned.

Nor was the complaint obnoxious to the demurrer interposed. The allegations, if true, were certainly sufficient to constitute a cause of action, and there was testimony enough to prevent the non suit moved.

Nor, admitting that W. M. Kinard bore the relation of surety to John P. Kinard, do we see anything in the acts of plaintiff towards John P. Kinard as principal, that would release the said W. M. Kinard, under any rule of law applicable to principals and sureties.

We do not think that the preponderance of the testimony is against the finding of his honor, as to the investment of Mrs. Kinard's money in the property conveyed—the evidence upon this subject being vague and inconclusive, too much so both as to the amount received and as to the use of it by her husband to warrant the conclusion that the deed was executed in consideration thereof, or as investment for her. The consideration expressed in the deed was natural love and affection.

The appellant objects to the return of the sheriff and claims that it was not in conformity with the act. Section 311 of Code. Doubtless, it was informal, and not in strict compliance with the requirements of the act, but we think it was sufficient to enable the plaintiff to commence action.

There is nothing in appellant's argument as to the pendency of the suit of Pelzer, Rodgers & Co. We suppose, therefore, that this exception was abandoned. In any event, however, the plaintiff not having been a party thereto, it could not be affected thereby.

We suppose his honor overlooked the fact that all claim to the personal property embraced in the deed had been abandoned by the plaintiff.

We think his honor, while having no power to order proceedings to set apart a homestead to the minor defendant, yet it was within his jurisdiction to determine the right if necessary to the adjudication of the case. *Munro* v. *Jeter*, 24 *S. C.*, 29 *; Swandale* v. *Swandale*, 25 *Id.*, 389.

It is the judgment of this court, that the judgment below be modified by reversing so much of said judgment as vacates the conveyance in question as to the personal property embraced therein; also so much as adjudged that all of the personal property levied upon had been accounted for; also so much as adjudged that the Circuit Judge had no jurisdiction in the matter of the homestead claimed; and in all other respects, that said judgment be affirmed. Let the case be remanded for such orders as may be necessary to have ascertained and applied to respondent's judgment, if not legally disposed of otherwise, a *pro rata* portion of the value of the personal property levied upon, other than the mules mentioned, and with leave to the minor defendant, Kinard, appellant, to take such steps as he may be advised to set up his claim, if any, to a homestead.

                                      Judgment modified.

A petition was filed by John Mayer Kinard for a rehearing, but it was refused by order of May 5, 1888, as follows:

PER CURIAM. We have carefully considered this petition, and finding that no fact or principle of law material to the issues presented by the appeal has been overlooked, the petition is dismissed.