DUNN *v.* MINNEMA.

1. APPEAL AND ERROR—QUESTIONS REVIEWABLE—NONAPPEALING PARTY.

Where plaintiff appealed in suit to subject an estate by the entirety to payment of judgment where trial court found a bank account and some United States savings bonds to be the sole property of the judgment debtor and no appeal was taken therefrom by him, the question of the propriety of such finding is not before the Supreme Court.

2. FRAUDULENT CONVEYANCES—INVESTMENT BY JUDGMENT DEBTOR IN ESTATE BY ENTIRETIES.

In determining whether or not addition to an investment in an estate by the entireties by a judgment debtor was fraudulent within the meaning of the fraudulent conveyance act, the transaction must be considered with reference to the effect on the rights of the creditor (3 Comp. Laws 1929, § 13352 *et seq.*).

3. SAME—ESTATES BY ENTIRETIES—ADDITION AFTER JUDGMENT AGAINST HUSBAND—CONSTRUCTIVE FRAUD.

Where, after rendition of a judgment in the sum of $4,667.63 against bankrupt husband who, with his wife, was purchasing home on land contract, payments on principal in the amount of

---

REFERENCES FOR POINTS IN HEADNOTES

[1] 3 Am. Jur., Appeal and Error, § 868.
[2, 3] 24 Am. Jur., Fraudulent Conveyances, §§ 12, 67.
[4] 24 Am. Jur., Fraudulent Conveyances, § 23.
[5] 24 Am. Jur., Fraudulent Conveyances, § 67.
[6] 22 Am. Jur., Exemptions, § 69.
[6] Debtor's exemption in respect of war savings bonds purchased with, or deducted from, exempt wages or salary. 150 A.L.R. 446.
[7] 26 Am. Jur., Homestead, § 95.
[8, 9] 19 Am. Jur., Equity, §§ 498, 505, 509.
[9] 24 Am. Jur., Fraudulent Conveyances, §§ 198–202.
[9] When statute of limitations or laches commences to run against action to set aside conveyance or transfer in fraud of creditors. 76 A.L.R. 864; 133 A.L.R. 1311.
[10] 24 Am. Jur., Fraudulent Conveyances, §§ 162, 166, 169; 26 Am. Jur., Homestead, § 95.

$3,305 thereafter made and deed obtained to property valued at time of trial at $6,750, the effect of such investment in an estate by the entireties constituted an investment in property ostensibly beyond the reach of creditors, and was a constructive fraud, irrespective of the actual intent with which such action was taken (3 Comp. Laws 1929, § 13352 *et seq.*).

4. SAME—FAIR CONSIDERATION.

What constitutes "a fair consideration" or "a fair equivalent" under the fraudulent conveyance act must be determined from the standpoint of creditors and, in general, the test is whether or not such conveyance, including one for payment of money, is execution proof (3 Comp. Laws 1929, § 13352 *et seq.*).

5. SAME—ESTATES BY ENTIRETIES—JUDGMENT CREDITORS.

Estates by the entireties cannot be created or augmented at the expense of judgment creditors (3 Comp. Laws 1929, § 13352 *et seq.*).

6. EXEMPTIONS—ESTATES BY ENTIRETIES—HOMESTEAD OF BANKRUPT AND WIFE.

Fact that portions of a bankrupt's earnings, exempt under the garnishment statute, were used in augmenting interest in homestead being purchased by bankrupt and his wife by the entireties does not render such augmented interest exempt from execution by his judgment creditor (Const. 1908, art. 14, § 2, as amended in 1943; 3 Comp. Laws 1929, § 14857 *et seq.*).

7. SAME—HOMESTEAD—VALUE.

A judgment debtor is not entitled to claim a homestead exemption beyond the amount fixed by the Constitution so as to exempt entire property worth substantially more than the exempted sum (Const. 1908, art. 14, § 2, as amended in 1943).

8. EQUITY—LACHES—TIME—PREJUDICE.

Mere delay in attempting to enforce a right does not constitute laches, as it must be made to appear that the delay resulted in prejudice to the party claiming laches of such character as to render it inequitable to enforce the right.

9. FRAUDULENT CONVEYANCES—LACHES—DELAY OF JUDGMENT CREDITOR.

Where defendant husband was involved in an automobile accident in 1927, judgment was obtained against him for $3,000, garnishment proceedings were substantially fruitless, judgment was renewed in sum of $4,667.63 in February, 1940, and during next 5 years defendant from his own earnings

augmented interest in homestead being purchased as entirety property in the amount of $3,305, the mere fact that judgment creditor delayed until 1945 before making further efforts to collect did not operate to the prejudice of defendant (3 Comp. Laws 1929, § 13352 *et seq.*).

10. SAME—HOMESTEADS—EXEMPTIONS—ESTATES BY ENTIRETIES.
   Trustee of defendant bankrupt was entitled, under the fraudulent conveyance act, to lien in amount by which such defendant had augmented principal of his investment in homestead he and his wife were purchasing by the entireties after judgment now sued on was renewed, and for satisfaction of such lien insofar as it exceeded homestead exemption (Const. 1908, art. 14, § 2, as amended in 1943; 3 Comp. Laws 1929, § 13392 *et seq.*).

Appeal from Kent; Souter (Dale), J. Submitted January 7, 1949. (Docket No. 35, Calendar No. 44,295.) Decided February 28, 1949.

Bill by Earl Waring Dunn, trustee of the estate of Gerald Minnema, bankrupt, against Gerald Minnema and wife to set aside deed as in fraud of plaintiff and claimant in bankruptcy and other relief. Decree for defendants on setting aside deed. Plaintiff appeals. Reversed and remanded.

*Russell Van Kovering,* for plaintiff.

*Warner, Norcross & Judd (Harold S. Sawyer, Jr.,* of counsel), for defendants.

CARR, J. The material facts in this case are not in dispute. In 1925, the defendants entered into a land contract for the purchase, as tenants by the entireties, of certain real estate in the city of Grand Rapids. Such property became their homestead. The total agreed consideration was $3,150, of which $650 was paid at the time the contract was made. Thereafter defendants continued to make payments from time to time.

In 1927, the defendant Gerald Minnema was involved in an automobile accident, as a result of which a judgment was obtained against him in the sum of $3,000. To enforce such judgment garnishment proceedings were brought, but the amount received by the judgment creditor thereunder was very small. The trial judge in his opinion fixed the total at $11. It is conceded that nothing further was paid on the judgment. For the purpose of renewing the obligation, suit was brought thereon in 1939, and under date of February 9, 1940, judgment in the sum of $4,667.63 was entered against defendant Gerald Minnema. In December, 1947, a writ of execution was issued on this judgment, but apparently it was not served. Thereafter defendants were brought into court on an order for a discovery, following which proceedings in bankruptcy were instituted by Mr. Minnema. Plaintiff in the instant case was appointed trustee, and began the present action. It does not appear that any claims other than the judgment above referred to were filed against the bankrupt's estate.

The record indicates that during the period from 1930 to 1940 defendants did not keep up their payments on the land contract in accordance with its terms. The amount of the obligation was increased because of a payment in the sum of $520 made by the vendors to defendants to cover the cost of certain improvements to the property, and also to permit the payment of certain bills owing by defendants. It is conceded that as of October 1, 1940, the balance due on the contract was $3,305, which amount was paid during the ensuing 5-year period; and under date of September 17, 1945, defendants received a warranty deed of the premises, taking title as tenants by the entireties. The undisputed testimony disclosed that at the time of the trial in circuit court the property was worth $6,750.

Plaintiff claims that the property in question should be subjected to the payment of the judgment above referred to, to the extent of the amount invested therein on and after October 1, 1940, the payments on principal being, as above noted, the sum of $3,305. The bill of complaint is based on the theory that such payments were within the terms of the uniform fraudulent conveyance act * and that relief should be granted accordingly. The bill of complaint also referred to a bank account in the joint names of the defendants, the balance therein being the sum of $22.23. The answer admitted that said account was established through the individual earnings of the judgment debtor, and the trial court decreed that such account was his sole and individual property in which Mrs. Minnema had no interest. A like provision was made in the decree with reference to 8 Series E United States savings bonds having a face maturity value of $25 each. From such findings the defendants have not appealed, and in consequence the question as to the propriety of the finding of the trial judge with respect to such items is not before us. The trial court came to the conclusion, further, that the payments of principal made on the land contract after October 1, 1940, were not fraudulent within the meaning of the statute above referred to, and were in effect the exercise of the right of a debtor to prefer one creditor to another. Plaintiff has appealed, asking the reversal of the decree insofar as it denied relief with reference to the real estate.

It is undisputed that the payments on the land contract which plaintiff seeks to reach in this proceeding were made from the individual earnings of Mr. Minnema. It appears in his testimony that such

---

* Act No. 310, Pub. Acts 1919 (3 Comp. Laws 1929, § 13392 *et seq.*, 3 Comp. Laws 1948, § 566.11 *et seq.*, [Stat. Ann. § 26.881 *et seq.*]).

payments were made from time to time in amounts ranging from $35 to $250 each. There is no showing in the record as to the aggregate amount of his earnings, or his expenditures other than the payments made on the land contract.

On behalf of defendants it is argued that the payments on the land contract, having been made for the purpose of protecting the home and acquiring title to it, were not fraudulent as to creditors within the meaning of the statute, that they did not result in putting available assets beyond the reach of the judgment creditor, and that such payments were made for a fair and adequate consideration. Plaintiff contends that as against the rights of the judgment creditor Mr. Minnema was not entitled to add to his investment in the entireties property, thereby increasing its value to the extent of the payments in question, and that his conduct in so doing was constructively fraudulent.

No claim is made that there was any actual intent on the part of Mr. Minnema to perpetrate a fraud on his judgment creditor. It is undisputed, however, that at the time he made the payments in question in this proceeding he was insolvent as a result of the judgment standing against him. The transaction must be considered with reference to the effect on the rights of the creditor. Notwithstanding the purpose for which the payments were made, they, in legal effect, constituted an investment in property ostensibly beyond the reach of creditors. Without reference to actual intent, the result was a constructive fraud against which relief may be granted. *First State Bank of Milford* v. *Wallace,* 201 Mich. 673; *Jaffe* v. *Ackerman,* 279 Mich. 304.

Plaintiff relies on the decision of this Court in *McCaslin* v. *Schouten,* 294 Mich. 180. There an insolvent debtor used assets that might have been available to his creditors to reduce a mortgage on

property held by himself and his wife as tenants by the entireties, which property was their homestead. It was held that a judgment creditor was entitled to a lien against the property to the extent by which the mortgage debt was reduced, because of such use of the debtor's assets. In view of the claims made in the case at bar, the following language used in the opinion is in point.

"We cannot accede to the contention that, since it resulted in paying *pro tanto* the mortgage obligation, Mr. Schouten's payment of $9,600 on the mortgage cannot be said to have been without 'a fair equivalent therefor;' and that therefore under the statute (3 Comp. Laws 1929, §§ 13394, 13395 * [Stat. Ann. §§ 26.883, 26.884]) the payment must be considered as one not 'fraudulent as to creditors.' What constitutes 'a fair equivalent' or 'a fair consideration' under the fraudulent conveyance act must be determined from the standpoint of creditors. The debtor might be satisfied to give his assets to a stranger or to exchange them for some worthless chattel. But the law will not permit him to do so if he thereby renders himself uncollectible to the detriment of his creditors. In general the test would seem to be whether the 'conveyance' by the debtor, which 'includes every payment of money' (3 Comp. Laws 1929, § 13392 † [Stat. Ann. § 26.881]), renders the debtor execution proof. By his payment of $9,600 on the mortgage indebtedness, Mr. Schouten rendered himself to that extent less solvent, because prior thereto he had assets in his own right available to his creditors to the extent of $9,600, but after the payment on the mortgage covering property held by the entireties, not only was this amount of Schouten's assets placed beyond the reach of his creditors, but not even Schouten himself, without the consent of his wife, could apply this or an equivalent amount in satisfaction of his debts. The

* 3 Comp. Laws 1948, §§ 566.13, 566.14.—REPORTER.
† 3 Comp. Laws 1948, § 566.11.—REPORTER.

additional interest which Mr. Schouten received in the entireties property by paying $9,600 of his money on the mortgage debt was not as to his creditors 'a fair equivalent' or 'a fair consideration' for the $9,600 of personal assets which he possessed prior thereto. In effect what Mr. Schouten did amounted to an investment of $9,600 of his personal assets in property to which he and his wife held title by the entireties. He was insolvent at the time and in law the transaction under the uniform fraudulent conveyance act was a fraud on his creditors."

As before stated, the payments here in question were made on the land contract out of the individual earnings of Mr. Minnema. There is no showing, however, that such payments were made from that portion of such earnings exempted from the claims of creditors. Neither are we concerned with speculations as to the use that the debtor might have made of his money if he had not paid up the contract therewith. Conceivably it might not have been invested at all, and might have been kept beyond the reach of creditors. However, we must deal with the situation that was actually created, namely an investment by the judgment debtor in real property held by himself and his wife as tenants by the entireties. In *Newlove* v. *Callaghan,* 86 Mich. 297 (24 Am. St. Rep. 123), it was said:

"It would be a gross injustice to permit debtors to apply moneys which should be applied to the payment of their debts to the creation of an estate which would be beyond the reach of their creditors.   *   *   * In other words, estates in entirety cannot be created at the expense of creditors, and held in fraud of the latter's right."

Even if portions of defendant's earnings exempt under the garnishment statute * were used in mak-

* 3 Comp. Laws 1929, § 14857 *et seq.,* 4 Comp. Laws 1948, § 628.1 *et seq.* (Stat. Ann. § 27.1855 *et seq.*).—Reporter.

ing the payments on the land contract, such fact is not material. *Lemerise* v. *Robinson,* 241 Mich. 528. See, also, *Martin* v. *Wayne Circuit Judge,* 228 Mich. 396; *Auditor General* v. *Olezniczak,* 302 Mich. 336; *Carrier* v. *Bryant,* 306 U. S. 545 (59 Sup. Ct. 707, 83 L. Ed. 976); *In re Guardianship of Letourneau,* 238 Wis. 473 (300 N. W. 248); *Iowa Methodist Hospital* v. *Long,* 234 Iowa, 843 (12 N. W. [2d] 171, 150 A. L. R. 440).

Defendants further contend that relief should be denied because the property in question is their homestead. The amount of the homestead exemption, as fixed by article 14, § 2, of the (1908) State Constitution (as amended at the general April election in 1943) is $2,500. If the property in question is subjected to the lien claimed by plaintiff, the value of the interest of the defendants will still remain substantially in excess of the amount of the constitutional exemption. The granting of the relief sought would not, therefore, operate to deprive the defendants of their homestead right. They are not, for reasons too obvious to require discussion, entitled to claim a homestead exemption to the full extent of the value of the property. The holding of this Court in *McCaslin* v. *Schouten, supra,* fully covers defendants' claims in this regard.

It is also argued that relief should be denied on the ground that the judgment creditor was guilty of laches. Apparently such claim is based on the fact that attempts were not made to collect the judgment during the period from 1940 to 1945. As before noted, garnishment proceedings were instituted on the original judgment after it was recovered in 1929. The results were doubtless such as to indicate to the creditor the futility of attempting to collect by such method. We fail to see how defendants were prejudiced because the creditor did not continue garnishment proceedings or attempt otherwise to

enforce the judgment which, as before noted, was renewed in 1940. The fact that defendants assumed when they made the payments on the contract that the property that they were acquiring could not be reached in any way or to any extent by the judgment creditor does not render the latter guilty of laches. This Court has repeatedly held that mere delay in attempting to enforce a right does not constitute laches, but that it must further appear that the delay resulted in prejudice to the party claiming laches of such character as to render it inequitable to enforce the right. *Sanders* v. *Campbell,* 231 Mich. 592; *Angeloff* v. *Smith,* 254 Mich. 99; *Carey* v. *Lauhoff,* 301 Mich. 168; *Manheim* v. *Urbani,* 318 Mich. 552.

The provisions of the uniform fraudulent conveyance act as construed by this Court in prior decisions, including those above cited, entitle plaintiff to the relief sought. Insofar as it denies such relief, the decree of the trial court is set aside. Because of the nature of the case and the necessity of further proceedings in the circuit court, we remand the case to that court for the entry of a decree in accordance with this opinion and for further proceedings in the cause. Such decree will grant to plaintiff the relief provided for in the original decree together with a lien on the real estate involved in the suit in the sum of $3,305, said sum to be paid within the period of 4 months following the entry of the decree, and providing further that in default of such payment the property may be sold to satisfy the lien. The decree will also provide for the protection of the homestead interest of the defendants to the extent of $2,500. Plaintiff may have costs.

SHARPE, C. J., and BUSHNELL, BOYLES, REID, NORTH, DETHMERS, and BUTZEL, JJ., concurred.