0991

The SOUTH CAROLINA NATIONAL BANK, as Successor Trustee U/W of Frank Hodges, Deceased, Respondent v. Frank B. HALTER, Individually and as Trustee, and Louise B. Caine, Appellants.

(359 S. E. (2d) 74)

Court of Appeals

*Larry D. Estridge,* of *Wyche, Burgess, Freeman & Parham, P.A., for Frank B. Halter.*

*J. D. Todd, Jr.,* and *Earle G. Prevost,* of *Leatherwood, Walker, Todd & Mann,* Greenville, *for Louise B. Caine.*

*T. E. Walsh* and *William E. Walsh,* of *Gaines & Walsh,* Spartanburg, *for respondent.*

Heard May 19, 1987.

Decided July 20, 1987.

CURETON, Judge:

South Carolina National Bank (SCNB) as testamentary trustee of Frank Hodges, deceased, brought this action against Frank B. Halter (Halter) as Trustee and Louise B. Caine (Mrs. Caine) to set aside certain conveyances made to them by R. M. Caine (Caine), now deceased. These claims

were first heard by a master who recommended denying relief to SCNB. The circuit court refused to accept the master's recommendations and granted SCNB substantially all the relief it had requested. Halter and Mrs. Caine appeal. We affirm in part, reverse in part and remand.

SCNB as trustee holds a judgment for $276,000.00 against the estate of Caine arising out of Caine's default in a commercial lease with Hodges. Before his death in March 1983, Caine transferred several assets to his wife and son-in-law. This appeal addresses whether four of those transfers were made by Caine for the purpose of defrauding his creditors. SCNB's complaint alleges that although Caine's estate has insufficient assets to pay its debts, Caine transferred a one-half interest in the marital residence and a mortgage to his wife in 1981. Additionally, it alleges that during the same year Caine transferred to his son-in-law Halter income producing real estate in trust to make alimony payments to his former wife and a mortgage to Halter, individually, to secure several former loans made by Halter to Caine. The bank claims all of these transactions violated Section 27-23-10, Code of Laws of South Carolina, 1976.

The complaint contains no allegations that the bank obtained an execution and return *nulla bona* prior to the institution of this action, nor was any proof made at trial of an execution and *nulla bona* return.[1] The appellants claim that SCNB may not maintain this action under Section 27-23-10, Code of Laws of South Carolina, 1976 because the bank neither alleged nor proved that an execution was issued and a return *nulla bona* obtained prior to bringing suit. Because the execution and *nulla bona* return issue affects all but one of the four conveyances, we will address that issue first.

## EXECUTION AND RETURN NULLA BONA

After the bank completed presentation of its case, Halter and Mrs. Caine moved for nonsuits on the basis that there

---

[1] According to the trial court's order, subsequent to the filing of the master's report, the bank obtained an execution and return *nulla bona* "even though the Probate record shows the estate had more than $50,000.00 in the bank."

had been no proof of an execution and return *nulla bona* against the property of Caine. The master reserved ruling on these motions for his report. In his report, besides finding the transfers by Caine to his wife and Halter were not in fact fraudulent as to his creditors, the master also found the claims must fail because SCNB did not obtain an execution and return *nulla bona* against the property of Caine before bringing suit. The circuit court disagreed and held that because the estate of R. M. Caine was insolvent, it was not necessary for SCNB to obtain an execution and return *nulla bona* as a condition precedent to the institution of the present action. We affirm the circuit court.

As we read the bank's complaint, it seeks only to avoid the transfers as voluntary acts of R. M. Caine. Nowhere does it contain allegations tending to show any actual, positive, or moral fraud on the part of Caine or Halter or their transferees. The question thus presented is whether a creditor must obtain a *nulla bona* return prior to bringing suit to nullify a voluntary transfer of the property of his deceased debtor.

The principal reason for requiring an execution and return *nulla bona* as a prerequisite to the maintenance of a suit in equity to set aside a conveyance as fraudulent under the Statute of Elizabeth is the requirement of demonstrating in the pleadings or at trial the fact the plaintiff has exhausted his legal remedies before he entreats a court of equity to hear his claim. *Temple v. Montgomery*, 157 S. C. 85, 153 S. E. 640 (1930).

In the case of *McMahan v. Dawkins*, 22 S. C. 314, 320-21 (1885), Chief Justice Simpson reflected upon the exhaustion principle as follows:

> It is a general rule, established and held in many cases, that in actions by creditors in equity to vacate voluntary deeds and conveyances of their debtors, *inter vivos*, to entitle them to proceed, they must have first exhausted their legal remedies. That this is the only ground upon which they can come into equity, and while it is not necessary to allege in the complaint a return of nulla bona, yet that is the sufficient evidence of the fact that all legal remedies have been exhausted. It is, too, one of the probative facts which shows the necessity

under which the plaintiff is to resort to the property covered by the deed which he seeks to set aside, and it is the foundation for the charge of legal fraud on account of which such deeds are frequently assailed. *It must appear, therefore, in the evidence, or the action will fail.* (Emphasis added).

The question of whether a judgment creditor must obtain an execution and return *nulla bona* as a condition precedent to his right to commence an action to avoid a transfer under the Statute of Elizabeth, codified as Section 27-23-10 of the Code, has given rise to much confusion at the bar over the years. This confusion is pointed out in *Temple v. Montgomery.* There, Mr. Justice Blease gave the clearest exposition of the law we have been able to find:

> Formerly, there was some confusion, it appears, as to the necessity of alleging and establishing the return of a *nulla bona* on an execution before a deed on the part of a debtor could be set aside at the instance of his creditor. The language of Chief Justice Simpson, in *Suber v. Chandler*, 18 S. C. 526, was apparently misunderstood by the members of the bar, and perhaps by some of our very able Judges. In that case, the distinguished jurist, not discussing the necessity of showing a *nulla bona* return, but considering the question of when the plaintiff's right of action accrued, in the course of his remarks, said this:
> "Hence, it has been often held that a creditor, before attempting to assail the conveyance of his debtor, must not simply be apparently unable to secure payment otherwise, but must absolutely fail to do so after exhausting all legal effort to that end, by judicially establishing his debt *and having an execution issued thereon.* (Emphasis added by Justice Blease).

157 S. C. at 93-94, 153 S. E. at 643.

Justice Blease then discussed all of the cases previously decided by the South Carolina Supreme Court on the issue and in an effort to clarify the law in the area summarized the holdings of the cases as follows:

> (1) The law requires in an action by a creditor *solely* to set aside his debtor's *voluntary deed for legal fraud,*

allegation and proof that the debt was reduced to judgment, execution issued to enforce the collection of the judgment, and a *nulla bona* return of the execution by the sheriff.

(2) In an action by a creditor, to set aside his debtor's deed, based on *actual or positive fraud*, it is not necessary to allege or prove a *nulla bona* return, nor even to reduce the debt to judgment.

(3) To institute or maintain a creditor's suit to marshal the assets of his deceased debtor, or in an action to sell realty in aid of personalty to pay debts, it is not required that there be any *nulla bona* return, or execution, or judgment.

(4) The *nulla bona* return in any of the cases mentioned above is *some evidence* of insolvency of the debtor, and the impossibility of the creditor to collect his debt *at law;* and when nothing else appears to the contrary, this evidence is *conclusive* as to those matters.

157 S. C. at 100-101, 153 S. E. at 646.

The bank urges and the circuit court held that because Caine is now deceased and his estate is insolvent, there was no need for an execution and return *nulla bona* prior to commencement of this suit. This would appear to be the view of a majority of the jurisdictions. *See* 37 Am. Jur. (2d) *Fraudulent Conveyances* Sections 177 and 186 (1968). Although the cases from this jurisdiction give rise to some interpretation, we think there are sufficient indications in them that we too follow this view. In the case of *Austin, Nichols & Co. v. Morris,* 23 S. C. 393, 402 (1885), Justice McGowan, after criticizing the requirement for a *nulla bona* return, states:

It is certainly true that equity has no jurisdiction where there is plain and adequate remedy at law, and it is generally required that the want of such plain and adequate remedy should be shown by a judgment and a return of nulla bona against the debtor, — that is to say, *inter vivos,* [emphasis added] for it does not seem to be considered necessary in the case of a decedent debtor.

There is an apparent undertaking in several of the cases to make a distinction in the requirement for a *nulla bona* to maintain a proceeding under the Stat-

ute of Elizabeth where the debtor is deceased vis-a-vis an action where the debtor is still alive. *See National Bank of Newberry v. Kinard*, 28 S. C. 101, 5 S. E. 464 (1888); *Ragsdale v. Holmes*, 1 S. C. 91 (1868); *McMahan v. Dawkins, supra.* The cases also indicate that a return *nulla bona* is only probative evidence that a debtor is insolvent and all legal remedies have been exhausted by the creditor to collect his debt. *See Temple v. Montgomery, supra; Austin, Nichols & Co. v. Morris, supra; McMahan v. Dawkins, supra.* It should then logically follow, that the litmus test for determining whether equity will take cognizance of a claim under the Statute is whether the Plaintiff creditor has alleged and proven that his deceased debtor is insolvent. Here, the trial judge found and the evidence shows that Caine's estate is insolvent. Moreover, while the pleadings were perhaps in-artfully prepared, a liberal construction of them reflects that they are in the nature of an action in aid of assets.[2] We thus hold that a *nulla bona* return was not a condition precedent to SCNB maintaining its suit to set aside the transfers.

## DEEANN NOTES

Regarding the notes, the bank's position simply is that the notes were never validly assigned to Mrs. Caine. We agree. Caine executed to his wife two notes, one dated December 31, 1976 for $35,531.00 and another dated December 31, 1977 for $82,002.21. These notes were secured in 1980 by written assignments of eight notes and a mortgage given by Deeann, Inc., to Caine. Caine then desired to utilize the Deeann notes and mortgage as security for a loan with Bankers Trust and the assignments were can-celled. Thereafter, by another written assignment dated April 8, 1983, Caine assigned only the Deeann mortgage to Mrs. Caine. Mrs. Caine was never given possession of the notes.

The master found that the assignment of the Deeann mortgage to Mrs. Caine was "legally sufficient to give any interested third party creditor sufficient legal notice of Mrs.

---

[2] As we read the record, SCNB is the only remaining creditor of the estate.

Caine's interest therein." The circuit court held, however, that the notes had never been assigned to Mrs. Caine and were thus the property of the estate of R. M. Caine. The circuit court reasoned that in order to have been transferred, the notes must have been negotiated in accordance with Section 36-3-202, Code of Laws of South Carolina, 1976. Likewise, it reasoned that if Caine had intended to grant his wife a security interest in the notes, the security interest should have been perfected as required by Code Section 36-9-304.

The assignment of a mortgage as distinct from the ■ debt it secures is nugatory and confers no rights upon the transferee, *Hahn v. Smith*, 157 S. C. 157, 154 S. E. 112 (1930), absent some indication that the parties also intended to transfer the debt. 59 C. J. S. *Mortgages* Section 359 (1949). We decipher no intent from the record that Caine intended to assign the notes to his wife to secure the mortgage. In the past, Caine had assigned the notes and the mortgage to both his first wife and Mrs. Caine. Thus, he was aware that the assignment of the mortgage should also be accompanied by an assignment of the notes. The most telling indication of Caine's intention was the fact that he did not give possession of the notes to his wife. We hold the evidence insufficient to show a legal or equitable assignment of the notes to Mrs. Caine.

Finally, we agree with the circuit court that there was neither a legal transfer of the notes under provisions of Code Sections 36-3-202 *et seq.* nor the perfection of a security interest in the notes under Code Section 36-9-304. We therefore affirm the holding of the circuit court that the notes remain the property of the estate of R. M. Caine.

## MARITAL RESIDENCE

The marital home known as 189 Chapman Road was purchased by the Caines in 1971; they took title as "Tenants in Common with rights of survivorship." The deed further provided: "[t]he rights of survivorship as indicated above in the Grantees is intended that the survivor of the Tenants in Common shall own the property in fee simple without the necessity of a will or other testamentary instrument." On November 9, 1981, Caine purported to transfer a one-half

interest in the property to his wife. On December 10, 1981, Mrs. Caine purported to convey back to Caine a life estate in the property. After her husband's death in 1983, Mrs. Caine sold the property for a net profit of approximately $105,000.00.

SCNB alleged that the November 1981 transfer from Caine to his wife "was without monetary consideration" and violated the Statute of Elizabeth. SCNB sought to have a constructive trust imposed on the proceeds of the sale for the benefit of Caine's creditors. The master held that the 1971 conveyance created a "joint tenancy with right of survivorship." He found that no lien could attach to Caine's interest in the property and that SCNB was not prejudiced by the conveyance to Mrs. Caine. In the absence of such a showing, the master refused to impose a constructive trust.

The circuit judge analyzed the transaction differently. Rejecting the concept that this property was beyond the reach of judgment creditors, he noted that "[I]t is sufficient when the evidence shows, as it does in this case, that he applied his individual funds to the purchase of 189 Chapman Road and, by subsequent transfers, attempted to put this property beyond the reach of his creditors." The court stated further that the Statute of Elizabeth covers all transfers without consideration which result in a creditor not being paid. The court concluded the Statute is broad enough to reach the money Caine paid toward the purchase of the marital residence "while he was ignoring the claims of his creditors." Finally, the court concluded that the November 9, 1981 deed was made with the intent of and resulted in delaying and hindering the payment of Caine's creditors and because the property is now in the hands of a third party, SCNB should have judgment against Mrs. Caine in the amount of $48,776.33 representing one-half of the net proceeds from the sale of the property.

We think that both the master and the circuit judge incorrectly analyzed the transfers here involved. Contrary to the master's conclusion, South Carolina recognizes a "tenancy in common with right of survivorship."

"A tenancy in common with benefit of survivorship is a case which may exist, without being a joint tenancy, because survivorship is not the only characteristic of a

joint tenancy." While the right of survivorship is not an incident to an estate in common, it may be annexed thereto if the parties so desire.

It has been said that great care must be exercised in construing conveyances to two or more persons and to the survivor of them. "If the intention was to create a tenancy in common for life, with cross remainders for life, with remainder in fee to the ultimate survivor, a joint tenancy would not accomplish the purpose because the right of survivorship may be defeated by a conveyance by any joint tenant but the vested cross-remainders and, in general, the contingent ultimate remainders are indestructible. Thus, not all instruments which provide that the survivor of a group will ultimately take the fee in severalty contemplate a joint tenancy; the intention may be to create a true future interest by way of a remainder or an executory limitation." American Law of Property, Volume II, Page 14.

*Davis v. Davis*, 223 S. C. 182, 186-87, 75 S. E. (2d) 46, 48 (1953).

Other than the deed, the record contains no evidence of the intention of the parties to the 1971 conveyance. It is axiomatic that intent of the parties to a deed will ordinarily be determined from the language of the instrument. The evidence of record shows that the parties to the 1971 deed intended to create a tenancy in common with right of survivorship. Thus, under *Davis v. Davis*, the deed created a true future interest in the surviving tenant by way of remainder and the deed from Caine to his wife in 1981 conveyed only Caine's life estate to his wife. Moreover, a month later the wife in turn not only reconveyed to Caine his life estate in the property, but as we construe the deed, her life estate also. We hardly see how these conveyances delayed creditors. To the contrary, the conveyances actually enhanced the interest of Caine during his lifetime.

The circuit court applied the reasoning of the case of *Dunn v. Minnema*, 323 Mich. 687, 36 N. W. (2d) 182 (1949), in holding that the equity from the marital residence could be reached by creditors because Caine applied his individual funds to purchase (make mortgage payments on) the residence while his creditors were not being

paid. The court further held that Caine's "actions subsequent to 1971 point inescapably to the conclusion that, by manipulation of the title, he [Caine ] was attempting to place this property beyond the reach of his creditors. . . ." We hold the reasoning of *Dunn* is inapplicable to the facts of this case. *Dunn* held that the use by an insolvent judgment debtor of his individual funds to make payments on a land contract for purchase with his wife, as tenants by the entirety, of real estate, constituted constructive fraud against judgment creditors so as to entitle a judgment creditor to a lien against the property to the extent of the amount invested by the debtor in the property. Here, there is no evidence that prior to 1981 Caine was insolvent. Conversely, SCNB claims the 1981 conveyances caused Caine to become insolvent. Besides, were we to hold the mortgage payments made by Caine on the property after the 1981 conveyances were made to defraud creditors, the record does not accurately reflect what sums were paid by Caine. Finally, it seems illogical to us that SCNB would argue that mortgage payments made to preserve Caine's life estate in the marital residence either hindered or prejudiced the bank. We also note that SCNB did not pray for a money judgment against Mrs. Caine. We reverse the order of the trial judge awarding SCNB a judgment against Mrs. Caine.

## NORTH MAIN STREET TRUST PROPERTY

In November 1981, Caine conveyed by deed to Halter as trustee three parcels of land on which are located buildings owned and operated by Deeann, Inc. as the Cabana Inn Motel.[3] The deed was not recorded until May 25, 1982 after SCNB instituted an action for breach of the Hodges lease. Halter as trustee was instructed by Caine to apply the $1,000.00 monthly rental payment from the Motel property as follows: $750.00 was to be paid to Southern Bank and Trust Company to service a mortgage obligation. The net income of $250.00 was to be held by Halter and combined with an additional $1,250.00 to be supplied by Caine each

---

[3] The deed did not set forth the terms and conditions of the trust. However, by a memorandum dated the same day, Caine instructed Halter concerning the management and disposition of the trust income and corpus.

month to pay a $1,500.00 monthly alimony obligation to his former wife. Upon the death of his former wife, the trust would terminate and the corpus be paid to Caine Company, a partnership owned by Halter and his wife.

The master found the trust existed for the valid purpose of providing a means to satisfy Caine's alimony obligation and had not been established for the purpose of defrauding or delaying his creditors. On the other hand, the circuit court reviewed the facts and concluded that the transfer in trust had been made with the intent to delay and hinder creditors. The court found the trust documents "untrustworthy" and held Halter had not carried his burden of proving consideration and the bona fides of the transaction. We agree.

Where transfers to family members are attacked upon the ground of actual fraud or because of their voluntary character, the law imposes a burden upon the transferee to establish both valuable consideration and the bona fides of the transaction by clear and convincing testimony. *Gardner v. Kirven,* 184 S. C. 37, 191 S. E. 814 (1937). Aside from the question of consideration, we think that proof of the bona fides of the transaction is lacking. The evidence shows that during the lifetime of Caine, the trust never really operated separate and apart from Caine's other business interests. The trust had no federal identification number; most of the funding for the trust was to come from Caine's personal income; no fiduciary income tax returns were filed for the trust and all income accruing to the trust was reported as part of Caine's personal income. We also note that the corpus of the trust worth approximately $150,000.00 became the property of the Caine Company after Caine's former wife's death. We glean from the record no reason for the Company being the residuary beneficiary except for the fact that the principals in the company are Caine's daughter and son-in-law and he intended to bestow upon them a valuable residuary asset. Halter testified that while he opened a bank account, deposited the rental payment therein and made the mortgage payment to Southern Bank, he did not always make the alimony payment to Caine's former wife because of the sporadic nature of Caine's contributions to the trust. No alimony payments, not

even the $250.00 excess from the rent, have been paid by Halter to the former wife subsequent to Caine's death. These facts together with the other circumstances of this case show an intent on Caine's part to place this asset beyond the reach of his creditors. We therefore affirm the holding of the circuit court.

## FRANKLIN HOTEL MORTGAGE

The master and circuit judge agreed that Halter had lent or advanced to Caine $35,000.00. These loans were made in the spring of 1980 primarily for the operation of the Franklin Hotel while Caine was very ill. In November 1981, Caine executed a promissory note and mortgage to Halter. The master found SCNB had failed to prove a lack of consideration for the note and mortgage. He found credible Halter's testimony that this transaction was not entered into to hinder, delay or defraud creditors.

The circuit court made no attempt to analyze Halter's credibility. Instead, the court reviewed the transactions and attendant circumstances and found this transfer was part and parcel of Caine's plan to hinder, delay and defraud creditors. Consequently, the court refused to accept the recommendations of the master and set aside the note and mortgage to Halter. We agree with the master that this transfer should be sustained.

First, we note that since both the circuit court and master agreed that there was consideration for the note and mortgage, and this was not a voluntary conveyance, the conduct of Caine must be judged by a different standard from the other transactions involved in this appeal. To annul the instant mortgage, which is supported by a valuable consideration, it must be shown not only that Caine intended to hinder, delay or defraud his creditors, but also that Halter participated in the fraud. *Lenhardt v. Ponder*, 64 S. C. 354, 42 S. E. 169 (1902). The evidence fails to show both an intent to defraud by Caine and participation by Halter in that intent.[4]

---

[4] Technically, we need go no further since SCNB failed to plead actual fraud on Caine's part and participation in that fraud by Halter.

While concededly there is some circumstantial basis for holding that the note and mortgage were a part of a scheme to defraud creditors, all of the direct evidence comes from Halter who we think explained away any doubt regarding the bona fides of the transaction. Moreover, whether such evidence was credible was a determination to be made by the master who heard and observed Halter testify.

Finally, the fact that Caine intended to prefer Halter over other creditors provides insufficient basis to avoid the transfer. *Lenhardt v. Ponder,* supra; *McElwee v. Kennedy,* 56 S. C. 154, 34 S. E. 86 (1899); *Magovern & Co. v. Richard,* 27 S. C. 272, 3 S. E. 340 (1887).

Accordingly, the order of the trial judge is affirmed in part, reversed in part and remanded to the trial court to effectuate the purposes for which it reserved jurisdiction in its order.

Affirmed in part, reversed in part and remanded.

GARDNER and SHAW, JJ., concur.